[No. 16002.  Department Two.  December 13, 1920.]

WESLEY BOYD *et al.*, *Respondents*, v. ELIZABETH HOLM
BONDY *et al.*, *Appellants*.[1]

VENDOR AND PURCHASER (39, 40)—CONTRACTS—CONDITIONS—PRO-
VISION AS TO ASSIGNMENT. Specific performance of a contract for
the sale of land will not be granted where the contract was assigned
without the written consent of the vendor, contrary to its terms.

SAME (48)—RESCISSION BY VENDOR—ESTOPPEL OR WAIVER. The
right to rescind a contract for the sale of land, assigned without
the written consent of the vendor, is not waived by failing to give
any reason for refusing to deliver the deed.

HUSBAND AND WIFE (24)—HUSBAND'S AUTHORITY TO WIFE'S SEPA-
RATE ESTATE. Evidence that a husband, who was a lawyer, prepared
a deed and examined a title at his wife's request, is insufficient to
show that he had authority as to a sale of her separate estate that
she made without consulting him.

Appeal from a judgment of the superior court for
King county, Smith, J., entered March 24, 1920, upon
findings in favor of the plaintiffs, in an action for the
specific performance of a contract, tried to the court.
Reversed.

[1]Reported in 194 Pac. 393.

*Wright, Kelleher, Allen & Hilen,* for appellants.
*Emerson H. Carrico,* for respondents.

MITCHELL, J.—The defendants are, and since August 28, 1918, have been, husband and wife. On June 12, 1918, Miss Lovisa C. Wagoner, by a written contract, agreed to sell lots 1 and 2, in block 15, of Washington Addition to Seattle, to C. H. Downs. The contract, in duplicate, was signed by both parties. It provided for installment payments, contained the usual forfeiture provisions and a specific prohibition against assignment by the vendee without the written consent of the vendor. It described a mortgage upon the property, subject to which (or its renewal) the property should be conveyed at any time the vendee's payments equaled the contract price, less the amount at that time due on the mortgage; and further provided that, upon making a conveyance, the vendee should assume and agree to pay the balance due on the mortgage. Miss Wagoner, by her deed dated August 9, 1919, and acknowledged August 16, 1919, conveyed the property and assigned her contract with Mr. Downs to the defendant Mrs. Bondy, who paid therefor out of her separate funds. The deed was duly recorded in the county auditor's office on August 18, 1919. The next day Mr. Downs, the vendee in the contract, in writing, assigned his contract to the plaintiff Wesley Boyd, without the written consent of either Miss Wagoner or Mrs. Bondy. On August 27, 1919, Mrs. Bondy served on both Mr. Downs and Mr. Boyd, in the manner provided for in the contract, a notice in writing addressed to Mr. Downs, declaring a forfeiture of the contract by reason of the assignment by him without any written consent. The Boyds three days later made a tender of the balance due under the contract, less the outstanding mort-

gage, and then instituted this suit for specific perform-
ance. There was a judgment against both defendants
requiring specific performance, from which they have
appealed.

Preliminarily, two propositions may be disposed of:

(1) The mention made of a declaration of forfeiture
by Mrs. Bondy, in the list of events leading up to this
suit, must not be taken as indicating that we pass upon
the legal effect of that declaration. The question of
forfeiture is not involved in this case. Mr. Downs is
not a party to this suit. The relief sought here is
nothing more or less than a judgment compelling the
performance of that which the respondents claim to be
an enforceable contract in their favor.

(2) A provision in the contract for the sale of
real estate, that the contract shall not be assigned
without the written consent of the vendor, is enforce-
able. *Lockerby v. Amon,* 64 Wash. 24, 116 Pac. 463,
Ann. Cas. 1913A 228, 35 L. R. A. (N. S.) 1064. As
was said in *Omaha v. Standard Oil Co.,* 55 Neb. 337, 74
N. W. 859, quoted in *Lockerby v. Amon:*

"But it is needless for us to speculate on the motives
for the city's action. It is enough for us to know—
whatever its reasons may have been—that it has, in
plain language, stipulated, against the assignment of
the contract. That stipulation is valid and must be
enforced."

Its enforcement is highly important in a case such
as this, since, by the terms of the contract, the vendor
is obligated to execute a conveyance, upon payment
of the purchase price less an outstanding interest-bear-
ing mortgage owing by the vendor, which, or a renewal
of it, the vendee should assume and agree to pay.

It appears from satisfactory and undisputed evi-
dence that the property was purchased by Mrs. Bondy
with money given to her by her father. Indeed we do

not understand respondents now contend to the contrary. They contend there are just two propositions in the case, namely: that, at the time of the tender to Mrs. Bondy, she did not refuse it on account of any claimed violation of the contract; and that Mr. Bondy has bound his wife by acting as her agent. The first proposition is not argued by the respondents. Mrs. Bondy testified she simply refused to give the respondents a deed. Her reasons we think are immaterial. The second proposition—that Mrs. Bondy is bound by the acts of her husband as her agent—is the principal controversy in this case. It appears the trial court was of the opinion she was bound by her husband's acts.

Respondents claim the evidence shows the following facts: That appellants are husband and wife; that Mr. Bondy was authorized by his wife to accept an installment payment on the contract after it had been assigned to her; that Mr. Bondy prepared the deed, examined the title and paid over the money to Miss Wagoner at the time Mrs. Bondy purchased the property; that he prepared a deed to Mr. Boyd for Mrs. Bondy to execute; that Mrs. Bondy wrote letters to Downs in her husband's name; and that the deed from Miss Wagoner to Mrs. Bondy was silent on its face as to its being the separate property of the purchaser named therein, and hence was presumptively community property. Upon these and the further claims that, at the time Mr. Bondy received the one payment on the contract for his wife, he was advised by Mr. Boyd that the contract had been assigned to him by Mr. Downs, and that the payment was on behalf of Mr. Boyd, and accepted by Mr. Bondy as an agent of such sort as to fully bind Mrs. Bondy generally, it is argued that in equity she should be compelled to specifically perform the contract assigned to the respondents. It becomes necessary to examine the proof.

A few days after Mrs. Bondy purchased the property, intending to be absent from Seattle some weeks, she instructed her husband to receive the money due that month on the contract. On August 25, 1919, Mr. Boyd gave him thirty-five dollars and took a receipt as follows:

"Receipt.          Seattle, Wash., Aug. 25, 1919.

"Received of Wesley Boyd a/c C. H. Downs, Thirty-five and no/100 Dollars, payment for Sept. on property at 4102 Eastern Ave. as per contract of sale.

Elizabeth Holm Bondy,

$35.00                    By G. A. O. Bondy."

The receipt did not say "a/c C. H. Downs contract," using Downs' name merely for identification of the contract, but it said "a/c C. H. Downs," clearly showing it was Downs, not Boyd, who was being credited with the payment. Then, and for some time prior thereto, Mr. Boyd had been acting as an agent of Mr. Downs, and Mr. Bondy knew it. Respondents claim that, at the time of payment, Mr. Bondy was told they had taken an assignment from Mr. Downs. This is denied by Mr. Bondy. Certainly no such claim or representation was ever known by Mrs. Bondy at or prior to the time she received the thirty-five dollars from her husband.

As to Mr. Bondy's conduct at the time of the purchase of the property by his wife, the evidence shows he was in no way consulted about the investment. He was never asked to examine the property, nor was he acquainted with it. Miss Wagoner and Mrs. Bondy were acquaintances, and the latter made the purchase without asking the advice or judgment of her husband. He is a lawyer, and in making the deal with Miss Wagoner his wife asked him to prepare the deed and examine the title papers, including the contract and assignment thereof,

which he did; while as to the payment to Miss Wagoner by Mr. Bondy of the purchase money, Mrs. Bondy furnished the money and left it with her husband, to be paid by him at his office, as a matter of convenience to Miss Wagoner. She received the deed and the assigned contract from Miss Wagoner by mail.

After Mrs. Bondy's notice of declaration of forfeiture, respondent had several interviews with Mr. Bondy attempting to procure a deed from Mrs. Bondy, in which he claims Mr. Bondy represented that he was his wife's agent. This is positively denied by Mr. Bondy, who did agree to prepare a deed for Mrs. Bondy to sign, if agreeable to her. The deed was prepared and she refused to execute it. She had never authorized her husband to act as her agent in disposing of the property, nor had she learned that the respondent ever claimed her husband had represented himself to be her agent.

It is insisted that Mrs. Bondy wrote to Mr. Downs concerning his interest under the contract, signing her husband's name. This is urged as showing the agency of her husband. Respondents gave secondary evidence of the contents and signature of the letter, over objections of the appellants, who yet contend with considerable show of reason that the ground was not properly laid for the admission of secondary evidence. The point is unimportant, however, for Mrs. Bondy, while admitting she wrote to Mr. Downs, denies she wrote in her husband's name, and even by respondents' own proof, the letter was written and answered by Mr. Downs before the acknowledgment and delivery of the deed from Miss Wagoner to Mrs. Bondy.

The property having been acquired by Mrs. Bondy after her marriage, it was presumptively the community property of herself and her husband, but that pre-

sumption has been overcome in this case by the evidence showing it to be her separate estate.

Over objections of the appellants, respondents introduced evidence tending to show an oral waiver in 1918 by Miss Wagoner, of the provision against the assignment of the contract except upon her written consent. Miss Wagoner positively denies it. The effect of that testimony, even if true, is immaterial in this case. It is not shown that either Mrs. Bondy knew of it prior to her purchase the following year, or that the respondents were advised of it prior to their purchase of the contract from Mr. Downs.

It may be said the record clearly shows that Mrs. Bondy is liberally educated; that she taught school a number of years; that she has never owned or been interested in any real property other than that involved in this case; that she has kept her money separate and checked and paid it out as she pleased; has made no investment except with her own funds; and that both before and after her marriage she attended to her own property and business affairs without any assistance from her husband, other than the few instances wherein he acted simply as a matter of accommodation to her and to Miss Wagoner, in a manner wholly insufficient to speak of him as an agent for the sale or disposition of his wife's property.

Reversed and remanded with directions to the trial court to enter judgment in favor of Mrs. Bondy declaring the property to be hers in her own separate right and free from any claim on the part of the respondents.

HOLCOMB, C. J., MAIN, TOLMAN, and MOUNT, JJ., concur.