29 P.(2d) 331

## MONTGOMERY v. FIRST MORTGAGE CO.

### No. 3838.

Supreme Court of New Mexico.

Jan. 29, 1934.

Bryan G. Johnson and Allen M. Tonkin, both of Albuquerque, for appellant.

Hockenhull & Mayes and Perkins L. Patton, all of Clovis, for appellee.

WATSON, Chief Justice.

This is an action by Margie R. Montgomery, to whom the cause of action was assigned by George E. Montgomery. It seeks recovery of $7,000 paid to First Mortgage Company as part of the purchase price of certain real estate and personal property. From a judgment for that amount, defendant has appealed.

A "memorandum of agreement" dated April 28, 1931, executed by appellant, therein called the vendor, and delivered to appellee's assignee, therein called the vendee, witnesses that, in consideration of $7,000, the receipt whereof is acknowledged, the vendor has sold to the vendee the real estate and personal property described; that the purchase price is $42,000, comprising three payments, $7,000 acknowledged to have been paid, $15,000 to be paid within thirty days, and $20,000 within ninety days. It further provides or cove-

nants that the vendor is the sole and absolute owner and will convey "free and clear of liens, mortgages, taxes, assessments and other incumbrances"; that the vendor shall immediately furnish abstracts made by some abstract company qualified to transact business in the state, for examination by the vendee's attorney, who shall have at least twenty days for such examination after delivery of the abstracts; that, if found upon such examination that "everything is in order" and that the abstracts disclose "good and merchantable" fee-simple title, free from liens, etc., the vendor shall execute conveyances and deliver the same to First National Bank of Albuquerque, with instructions for delivery to the vendee "at the time of payment of said $20,000 herein provided"; that on the making of the $15,000 payment the vendee shall have possession; that the vendor shall execute all instruments of further assurance necessary or proper to place in the vendee a good, merchantable, fee simple title, notwithstanding his previous acceptance of the conveyances and making the payments stipulated.

This memorandum having been executed and delivered, and the $7,000 paid, abstracts were immediately delivered to the vendee's attorney, who, on May 18th, gave his written opinion.

On May 20th the vendee wrote the First National Bank: " * * * In my judgment, your title is in such shape that I do not think that I could accept it. It could possibly be made merchantable in time but it is my judgment that it will require considerable more time than you now anticipate. * * * Therefore I ask that you transfer the $7,000

to my open account. It is possible that we might get together on this in some deal that might be satisfactory to both, but I wouldn't care to go on with it in the shape that it is in."

With this letter he transmitted a copy of his attorney's opinion on the title. The next day he assigned his cause of action to the appellee.

Appellant made prompt efforts to overcome the vendee's objections to the title, but the latter and his assignee, the appellee, stood upon this repudiation or attempted rescission. The legality of it is the decisive question.

There are two chains of title and two opinions, but our purposes permit them to be treated as one. The defects pointed out by the vendee's attorney were these: (1) The chain of title included a deed from Shields heirs. It was made by attorney in fact in December, 1921, under power of attorney made in January and February, 1920. This was said to require "some showing that none of the heirs had died in the meantime." (2) There was an outstanding executory sale from the vendor to one Seiders. (3) There was an outstanding mechanic's and materialman's lien. (4) Sandoval county records having been destroyed, the status of the 1921, 1922, and 1923 taxes did not appear, and the attorney advised that "a release should be obtained." (5) Title had never been acquired from the heirs of Jose Francisco Archuleta, deceased, in 1890.

The first four objections, while important, were removable, to which end appellant at once addressed itself. It obtained an affida-

vit that none of the Shields heirs had died, and arranged to obtain a quitclaim from each if required. It already had and exhibited a quitclaim from Seiders. Although it was contesting the lien, it offered to recognize and pay it, if required to close the trade. It offered also, and was able, to pay the taxes questioned, if unable to produce receipts.

The fifth objection rested upon an entry in one of the several abstracts exhibited, made by Albuquerque Title & Guaranty Company, which had disposed of its business to Bernalillo County Abstract & Title Company. The latter, considering that the entry had no proper place in the abstract because covering different lands, made and certified a new abstract omitting it. This, with the other offers, was tendered to the vendee's attorney, who stated that he was not authorized to proceed further.

On June 8th, appellant wrote the vendee, reviewing its efforts to overcome the objections raised, stating willingness and ability to perform, and that it had been advised by vendee's attorney that the vendee took the position that he had rescinded the agreement, and stating "we shall be obliged to hold you responsible for all damages accruing by reason of your breach of contract."

Replying on June 9th, the vendee said:

"You are correct in your statement that I rescinded the contract as of the date of my letter of May 21, 1931, and the oral communication you mention made to you by my attorney * * * of the same date.

"The position I took at that time was that you had not furnished abstracts showing a good and merchantable title to the tracts of land you agreed to sell and therefore I refused to make further payments upon the property and demanded the return of the down payment.

"You are also advised that I have assigned my interests in said sum of money to Margie Edgar Montgomery and you will please pay her the money deposited by me."

The learned trial judge gave careful consideration to the case, as is evidenced by his full and able written opinion. By it the theory of the decision is brought clearly before us. He correctly recognized that appellee's cause of action must stand or fall according as her assignor, the vendee, was or was not justified in his attempted rescission. Such justification, as he also properly recognized, must be found, if anywhere, in some breach of the contract on appellant's part. As appellee's counsel stand squarely upon the opinion, we direct our attention to it.

Mentioning appellant's contention that, after submitting the abstracts, it had a reasonable time, and the full ninety days before the final payment need be made, within which to cure defects which might be pointed out, the court passes to appellee's contention that, although not expressed, this contract makes time of the essence. In this connection the court says: "The court is of the opinion that in order to sustain the position of plaintiff in this case, time must have been of the essence of the contract."

Then, analyzing the contract, the court holds it to mean that the vendor must "immediately" submit abstracts free from defect,

and that there was no time or opportunity to remove any defects which might appear. Since the objections made were tenable and disclosed unmerchantable title, the vendee was in a legal position, the court holds, immediately to rescind, as he did.

This construction is unquestionably harsh as against a vendor. The court recognized that customarily there is a reasonable time for curing claimed defects. Neither the opinion nor counsel's brief points to a precedent for such construction. Appellant contends that it is entitled to a liberal construction in its favor, as the contract was drawn by the vendee's attorney. We feel bound, however, by the finding of fact that the drafting attorney was not attorney for or representing the vendee at the time, though he was immediately afterward in his employ to examine the abstracts. Still the construction is to be reasonable.

The uncertainty of this contract arises from the failure to correlate the several steps to be taken and the omission of some usual provisions. Arranging the steps as nearly as we can in the order of time, they are as follows: First, the execution and delivery of the contract and the payment of $7,000; second, the "immediate" furnishing of abstracts for examination; third, the report of the examining attorney, for which "at least" twenty days after delivery of the abstracts is allowed; fourth, the vendor is to convey and place deeds in escrow "forthwith" upon such report, if favorable; fifth, the vendee is to pay $15,000 on or before May 28th; sixth, the vendee is to have possession on making the $15,000 payment; seventh, the vendee is to pay $20,000 on or before July 27th; eighth, the vendee is to have delivery of the deeds on payment of the $20,000; ninth, the vendor is to execute and deliver instruments of further assurance, if required.

The trial court was "of the opinion that the terms and provisions of this contract, read together and taken as a whole, disclose that time is of the essence of this contract, because any other construction would have worked a great hardship upon the purchaser, according to the terms of the contract."

The hardship pointed out is that the vendee might be required to make the $15,000 payment at a time before a merchantable title had been disclosed. This may be a just criticism of the contract as drawn, but we do not attach such fatal consequences to it. In the first place, on appellant's mere assurance of ability to make title, the vendee at once paid $7,000, demonstrating a confidence in appellant's responsibility and reliability. Such being his confidence, he engaged to make another payment. In the second place, the vendee did not pay or tender the $15,000, and appellant did not take advantage of the default. Whether the payment could have been enforced while the title remained uncertain is a question not before us. At least appellant could and might have waived it.

Ample provision is said to have been made for the examination of this title within thirty days from the date of the contract, for the reason that the vendee's second payment was then to become due. Is this true? It will be observed that, while a definite limit or date is fixed on or before which the second pay-

ment must be made, the time for the attorney's report is quite indefinite. He is given at least twenty days and, of course, might take thirty or forty without any default. Then his time does not commence with the date of the contract, but with the delivery of the abstracts. So the vendee, if he desired, could advance the time of payment, at the same time delaying his examination. On the thirtieth day, some defect, promptly curable, might have been pointed out and, under the construction urged by appellee, would have furnished legal excuse for rescission. In fact, the vendee did not even wait until the thirtieth day, but several days earlier asserted and attempted to exercise the right to rescind.

It is said that appellant should not have risked submitting to vendee's attorney an imperfect abstract, but should first have had it perfected after examination by its own attorney, as it could have done so readily and in so short and reasonable a time. That this is not the usual procedure is well known to the profession. The reason is that one attorney cannot anticipate with any certainty the title requirements of another. The seller's attorney, to be on the safe side, would be forced to a time-consuming and often expensive labor, to assure against objections that might never be made.

Moreover, appellant engaged "immediately" to submit its abstracts. The implication is that they were to be submitted just as they were, subject to a reasonable time to cure defects. If it had delayed delivery of the abstracts during a reasonable time for extending them to date and for examination and perfection of them by another attorney, the vendee might well have complained.

It is true that the contract is silent as to what shall follow an unfavorable report by the attorney. But that does not satisfy us that the vendor was to risk all on the abstracts immediately submitted for examination. This loosely drawn contract leaves much to be supplied by reason and experience. Possible defects must have been contemplated. They are the rule rather than the exception. The very fact that an examination and report are required suggests the possibility of objections. Giving both parties credit for good faith, and a then desire and expectation of trading, we must supply the omitted provision by holding that, if the attorney's report should disclose some things "not in order," there should be some reasonable opportunity to put them in order.

Appellant cites many authorities to the proposition that the vendor has such opportunity, at least up to the time when the contract requires delivery of the deed. Appellee admits that such is the general rule, but, without citation of authority, depends upon the peculiarities of this contract to vary the rule. In this we cannot agree with the contention or with the holding below.

Taking this contract as a whole, we think that the vendee's obligation to make the second payment and the vendor's obligation to perfect the title, are independent matters. This brings us to the conclusion that, as to objections 1 to 4, there had been no breach on the part of appellant warranting rescission by the vendee. A question remains as to objection 5.

■ In the abstract originally submitted there appeared a certain declaratory statement by Jose Francisco Archuleta and his will. In the latter he disclosed the names of his children. Their interests had not been acquired. The examining attorney assumed or concluded that the declaratory statement described the lands in question, or part of them. As above stated, the new abstract omitted both these instruments. It did contain, however, a quitclaim deed by Emeterio Archuleta, one of the children of Jose Francisco.

While the examining attorney disclaimed authority to make further examination and report, he did examine the new abstract and did advise the appellee or the vendee that a suit to quiet title would be necessary to overcome the objections based on apparent outstanding interests in the Archuleta heirs.

At the trial the expert testimony at least was in conflict as to whether the title as last submitted was merchantable. It was held not to be. The court then held, with the examining attorney, that it could be made merchantable only by a decree quieting it as against the Archuleta heirs, and held, as upon judicial notice, that such a decree could not have been obtained at or before the time when the vendee would have become entitled to a deed. So, it was decided, even if the court was wrong in holding appellant to the defective title first submitted, there developed an impossibility of timely performance by appellant which excused appellee or the vendee from further performance and justified rescission.

This theory must fail unless it be true that a decree was the only means of removing the possible Archuleta claims. The opinion does not point out the reason for such a holding. No evidence is pointed to as warranting it. As matter of law, it could not be said to be impossible to obtain sufficient conveyances from the Archuleta heirs.

■ Assuming, as we now do, that the substituted abstract still failed to disclose merchantable title, we find it impossible to sustain the judgment. No breach of the contract is shown to have occurred on the part of appellant when the vendee assumed to rescind it and assigned his cause of action. By his early attempt to rescind, he risked all.

We feel constrained to reverse the judgment. The cause will be remanded for further proceedings consistent herewith. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.