[No. 25896.   Department One.   August 10, 1936.]

JOSEPH BETHEL, *Appellant*, v. WILLIAM H. MATTHEWS *et al., Respondents.*[1]

*Oscar A. Zabel* and *N. D. Wernette,* for appellant.
*Gleeson & Gleeson,* for respondents.

MITCHELL, J.—This action was brought by Joseph Bethel to recover from William H. Matthews and wife $22,500 damages alleged to have been suffered upon the refusal of Matthews and wife to carry out an existing real estate contract between Matthews and wife and Carl M. Ervin and wife. The plaintiff sued as a remote assignee of the purchasers' interests under the contract.

Upon issues framed, the action was tried without a

[1]Reported in 59 P. (2d) 1125.

jury. At the close of plaintiff's case, findings of fact and conclusions of law were entered against the plaintiff, among others, that the assignments were not binding upon the vendors. Judgment was entered, among other things, that the plaintiff take nothing by the action. The plaintiff has appealed.

The controlling facts, as shown by the evidence on behalf of the appellant and as shown by the formal findings of fact, which are supported by the evidence introduced by the appellant, are about as follows: On June 15, 1929, William H. Matthews and Mabel M. Matthews, his wife, of Spokane, Washington, as vendors, and Carl M. Ervin and Agnes M. Ervin, his wife, as purchasers, entered into an executory, forfeitable real estate contract wherein the vendors agreed to sell, and the purchasers agreed to buy, a certain tract of land in the state of Idaho for approximately $35,000, upon which an exchange of other property was received in part payment of the purchase price, leaving a balance due of $12,500, payable in installments, the last one of them maturing January 1, 1940. Deferred payments bore different rates of interest.

The purchasers also agreed, among other things, to pay taxes and assessments against the property before delinquency, and to maintain fire insurance on the buildings, loss, if any, payable to the vendors; and not to do or suffer any waste on the premises. Time was declared to be of the essence of the contract, with the right of the vendors to forfeit the contract upon failure of the purchasers to perform on their part, upon the vendors giving notice in writing in the manner set out in the contract, in which event the

" . . . purchasers shall forfeit all payments made by them hereunder and all rights acquired or then existing, and such payments shall be retained by said vendors as liquidated damages and as rental for use and occupancy, etc."

It was further provided that:

"Any assignment of interest by the purchasers to be binding upon the vendors shall first receive the written consent of one of them endorsed hereon."

The contract was signed and duly acknowledged by all the parties.

On July 21, 1930, Agnes M. Ervin made a written assignment of all of her right and interest in the contract to Z. A. Pfile and his wife, stating therein that the unpaid balance due on the contract at that time was $12,500, with interest from July 1, 1930. Thereafter, by instrument acknowledged January 19, 1931, Z. A. Pfile and his wife assigned all their right and interest in the contract to Norman B. Moss and Lodema Moss, his wife, stating therein that the unpaid balance due on the contract at that time was "$12,500 with interest from July 1, 1930, at 5 and 8 per cent." Thereafter, June 23, 1931, Norman B. Moss and his wife made a written assignment of their interest in the contract to Joseph Bethel, the plaintiff in this action.

It appears that neither of the written assignments was filed for record. It also appears that Matthews or his wife was not a party to either assignment, was not consulted with reference to either, and did not consent to, or receive any consideration on account of, either assignment, and never at any time waived the benefit of the provision in the contract against assignment without the written consent of one of the vendors endorsed on the contract.

On account of defaults in several particulars on the part of the purchasers, the vendors, on June 8, 1931, according to the provisions and terms of the contract, gave the purchasers written notice of their several defaults and delinquencies, stating that, unless they were remedied within thirty days, as provided in the contract, the vendors would claim a forfeiture and retain

all payments as liquidated damages, etc. It further appears that none of such defaults was remedied within thirty days, at the time of the commencement of this action, or at all.

As to the connection of the Pfiles with the contract, it appears that, after he took an assignment from Mrs. Ervin, he paid Matthews $280, taking a receipt in that amount as "partial" payment on interest overdue, to "apply on Ervin contract." He did not claim that Matthews knew, or had any reason to believe, that Mrs. Ervin had given him a written assignment of the contract, nor is there any suggestion in the evidence that Matthews and wife, or either of them, ever gave, or was requested to give, written consent to the assignment to Pfile endorsed upon the contract, or at all. Nor was there any information that Matthews and wife, or that either of them, intended or thought of waiving that provision in the contract.

As to Moss and wife, it does not appear whether they, or either of them, ever spoke to the vendors about the contract. Neither of them ever paid or tendered any money to the vendors.

As to appellant's connection with the matter, it clearly appears, as the trial court found:

"(5) That on or about the 6th day of July, 1931, the said plaintiff came to Spokane from his home in Seattle, Washington, and visited the said W. H. Matthews and talked to him about the purchase of the assignment of the interests of the vendees of said contract; that no agreement was made at said time and that subsequently and a few days later and before the 9th day of July, the said Bethel tendered to the defendants Matthews and wife a check on a Portland bank issued by a man by the name of Sheridan, a stranger to said contract and said action, which said check was for the deferred payments under said notice, and the said Matthews refused to accept said check as money and some conversation ensued in which Mat-

thews stated that he would be in his office the following day; that subsequently and on the 9th day of July, 1931, Walter G. Merryweather on behalf of the plaintiff, Joseph Bethel, tendered in money the amount of the deferred payments, but made no statement whatsoever with regard to the care of the place and the waste being committed on said land claimed by the defendants Matthews and wife herein, but at the said time the defendant Matthews refused to accept said money, stating as one of the reasons that he, Matthews, was tired of dealing with men or women who had failed to pay and were not financially responsible, and that he did not consider the plaintiff Joseph Bethel responsible and would not consent to the waiver of the provisions in the contract restricting assignment without his written consent; that no offer was made to repair the building on said property or to take care of any waste by reason of range cattle breaking in as claimed by the said defendants, by the said Walter G. Merryweather or the said Bethel or either of them.''

The amount of the check thus tendered covered only the amount then due, according to the notice of forfeiture, and not the total balance due on the purchase price—a difference of no moment, however, as to the ultimate rights of the parties. *Lockerby v. Amon,* 64 Wash. 24, 116 Pac. 463, Ann. Cas. 1913A, 228, 35 L. R. A. (N. S.) 1064.

As to the appellant, as already stated, there was no consent, written or otherwise, on the part of the vendors to any assignment of the contract, nor agreement, oral or otherwise, to waive the provision against assignment without the written consent of the vendors; but, on the contrary, there was a positive refusal on their part to give any such consent or waiver, for reasons stated at the time they first learned of the purported assignment. Still further, it may be noticed that in neither of the assignments, or otherwise, was there any agreement, promise or offer on the part of the assignee to assume any burden under the contract

or to pay anything to the vendors on the balance due— manifestly, avoiding making any contract with the vendors.

Appellant relies on authorities like *Batley v. Dewalt*, 56 Wash. 431, 105 Pac. 1029, holding that a covenant against an assignment may be waived by a vendor or landlord. In that case, the landlords, the Rombecks, let the premises for a term of years, during which, without the written consent of the landlords, the lessees, Amelia Batley and George Batley, her husband, assigned the remainder of the term and sold the furniture in the house on the premises to Laura Dewalt *et al.*, taking a note and mortgage for part of the purchase price. In a suit on the note and mortgage, the defendants therein set up a counterclaim for a breach of an alleged agreement on the part of the assignors to procure the written consent of the Rombecks to a written assignment of the lease. The counterclaim was not allowed for reasons stated by the court, as follows:

"The Rombecks waived the right to declare a forfeiture of the lease by their conduct in accepting rent from the assignees of the term with full knowledge of the assignment. The covenant against assignments was broken as soon as the assignment was made, and the Rombecks had the option to declare a forfeiture or recognize the assignees as their tenants. *As soon as they accepted rent in advance from the assignees, with full knowledge of all the facts,* the right to declare a forfeiture was waived as fully and completely as by the written consent provided for in the lease itself. Such is the rule announced by this court, and the rule is amply supported by authority. [Citing authorities.]" (Italics ours.)

Then, in that case, by way of contrast, the case of *Darmstaetter v. Hoffman,* 120 Mich. 48, 78 N. W. 1014, was discussed, wherein, upon this subject, the Michigan court said:

"But in this case the lessors have not consented to the assignment. There is nothing in the record to indicate that they had any knowledge of it, or had done any act which could operate as a waiver of this covenant in the lease not to assign. Until Hubbard & King had assented in writing, or had recognized defendant as their tenant, that relation did not exist."

In the present case, the vendors did not waive their right and did not consent to the assignments; nor did they know of the assignments, except the one to the appellant, which they declined at once to recognize.

This limitation upon the right of assignment was lawful and enforceable, and an assignment in violation of such provision would confer no right whatever on the assignee. *Behrens v. Cloudy,* 50 Wash. 400, 97 Pac. 450.

The primary purpose of terms prohibiting assignment of a contract, relating to one's private affairs, without the consent of the vendor, is to protect the vendor in selecting, if he wishes, the persons with whom he deals.

"A party has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent." *Hunter Tract Imp. Co. v. Stone,* 58 Wash. 661, 109 Pac. 112.

This is the right of private contract, not yet abolished.

The case of *Lockerby v. Amon, supra,* is in point. Amon and others agreed, in writing, to sell to one Swingle certain real property for the sum of $1,600, one dollar cash, and the remainder to be paid on or before two years. The contract to sell ran to "the party of the second part, his heirs and assigns." The contract further provided, however:

" 'And it is further agreed that no assignment of this agreement shall be valid without the consent and

signature of W. R. Amon and Sarah M. Amon, his wife, the parties of the first part.' ''

Afterward, the contract was assigned by Swingle and wife to Herbert E. Johnson, plaintiff's intestate, who *tendered the full amount due* and demanded a deed. A deed being refused, an action was brought to compel specific performance. Relief was denied on the ground that the contract was not assignable. On appeal, the judgment was affirmed. *Hunter Tract Imp. Co. v. Stone, supra,* and *Behrens v. Cloudy, supra,* were referred to with approval. It was held that ''The privilege of selecting a grantee is an incident of ownership, · . . . '' And further,

''A vendor may have confidence that his vendee will not use the property to his disadvantage. It is his privilege to decline to deal with strangers.''

Then, noticing the use of the word ''assignee'' in the contract, it was said:

''Whatever may have been the reasons for reserving the right to decline to deal with an assignee, such reservation contravenes no rule of public policy, and is enforceable. We attach no importance to the clauses of the contract in which the word 'assignee' is used. They will be construed in the light of the whole contract, and when so regarded, must be taken to mean such assignees as the vendor is willing to accept.''

The appellant has no standing in court under the assignments or either of them.

Judgment affirmed.

MILLARD, C. J., TOLMAN, STEINERT, and GERAGHTY, JJ., concur.