179 P.2d 757

**BELL v. LAMMON.**

No. 4995.

Supreme Court of New Mexico.

April 14, 1947.

Otto Smith and L. G. Skarda, both of Clovis, for appellant.

James J. McNamara, of Clovis, for appellee.

McGHEE, Justice.

The appellee was given judgment for money paid to appellant as part of the purchase price of real estate and a package liquor store. We will refer to the parties as they appeared below.

The defendant was the owner of some lots and a building in Taiban, New Mexico, in which he operated a package liquor store under a state license. The plaintiff had worked as a liquor salesman for between four and five years for Ilfeld & Company, wholesale liquor dealers, and had later owned and operated a retail liquor estab-

lishment in Clovis, New Mexico. On June 1, 1945, he came to the defendant's liquor store and asked if it was for sale and on being told that it was he took a pencil and paper and spent between one and two hours in the storeroom checking the stock. On his return from the stock room he and the defendant soon agreed upon a sale of the lots, building, fixtures and stock and went to Fort Sumner where Keith W. Edwards, an able and reputable member of the bar, acting for both parties, prepared and they signed the following contract:

"This Contract, Made and Entered into by and between Harry V. Lammon, of Taiban, New Mexico, party of the first part, and Tony G. Bell, of Clovis, New Mexico, party of the second part,

Witnesseth

"1. That the party of the first part agrees to sell and the party of the second part to buy the following described real and personal property, to-wit:

"Lots one and two in block nineteen of the Lindsey-Oldham Addition to Taiban, within the County of De Baca and State of New Mexico, together with all of the fixtures and equipment in the dwelling on said premises, including the cash register, frigidaire, etc., and the well, windmill, storage tank, electric plant and all other equipment on the said premises, it being understood that the first party is to remove only his purely personal effects and the bed and other personal property.      . . .     ..

"All of the beer, whiskey, wine and other liquors, gin, etc. and etc., constituting the stock of goods and merchandise now in the said dwelling, which is being used as a package house and in which the first party is now doing business, together with the good will of the business of retailing beer, wines, whiskey, etc.

"One (1) Dodge truck (pick-up)

"One (1) certain contract between the first party and the Duke City Wine Company, of Alburquerque, New Mexico, for delivery of certain liquors under the terms and conditions thereof, and on which said contract the first party has paid a deposit of $3600.00 to the said Duke City Wine Company.

"2. That the first party shall furnish a properly certified abstract, showing a merchantable title in fee simple in said first party, free and clear of all liens and encumbrances, with taxes paid to and including 1944, which said abstract shall be paid for by first party and become the property of the second party upon payment by him of the full purchase price of the said real estate hereinafter described. That the second party shall have a reasonable time within which to cure any objections to the title properly raised by the second party. That the purchase price of said real estate shall be the sum of Five Thousand ($5000.00) Dollars, payable as follows: $1500.00 in cash and a promissory note in the sum of $3500.00, payable on or before the 1st day

of June, 1946, secured by a mortgage deed back on said real estate, for and in consideration of which the first party agrees to deliver to the second party a good and sufficient warranty deed, executed by said first party and his wife, running to the second party, the said cash payment and note and mortgage to be delivered to the first party upon acceptance of said real estate, and upon tender of said cash, note and mortgage deed, the said first party shall deliver the said deed, the delivery of said cash, note and mortgage and the said deed to be simultaneous acts.

"3. That the purchase price of the stock of beer, wines, whiskey, gin and all other liquors, etc., shall be such sum as may aggregate the invoice price thereof on the 3rd day of June, 1945, when the said parties are to inventory said stock, and such sum shall be paid in cash when the said inventory is completed, when and whereupon the second party is to take possession of the premises and the said stock.

"4. That the said Dodge truck (pick-up) shall be delivered when the said inventory of the stock is completed and shall be paid for in the amount and at the time to be later agreed upon by and between the parties hereto.

"5. That the said contract between the first party and the said Duke City Wine Company shall be assigned to the second party upon payment by him to the first party of the said sum of $3600.00, being the amount heretofore paid by the first party to the said company, it being agreed that the parties hereto will go to Albuquerque and complete the payment of the said $3600.00 to the first party.

"6. That the party of the second part agrees to pay to the party of the first part upon the execution of this contract the sum of $3000.00, to bind the bargain and to be retained by the first party as part payment on the stock of liquors, beer, wine, whiskey, etc.

"7. It is agreed by and between the parties hereto that time is of the essence of this contract and that all things to be done hereunder shall be done promptly and in an expeditious manner.

"8. This contract shall extend to and be binding upon the heirs, executors, administrators and assigns of the parties hereto.

"In Witness Whereof, the parties hereto have hereunto set their hands on this 1st day of June, A.D., 1945.

"(Signed)    Harry V. Lammon
"(Signed)    Tony G. Bell
"Witnesses:
"G. W. Heisel"

The plaintiff immediately made the $3,000 down payment as provided. They met at the store on Sunday, June 3, 1945, and with the assistance of two others spent the day taking inventory and extending the prices, although the final computations were

not completed for two or three days. The inventory value was approximately $25,-000. At the completion of taking the inventory on June 3 the plaintiff made the second payment of $3,000, took possession of the store, and arranged for a Mr. Baker to continue as the salesman. On the next Wednesday plaintiff and defendant went to Albuquerque in the Dodge truck where they called at various wholesale houses and informed them of the sale and the plaintiff, according to the defendant's testimony, purchased additional stock amounting to $788, which was sent to the store by a truck line company and paid for by plaintiff while the defendant says it was a regular shipment made to defendant. The plaintiff had stopped at the store Wednesday morning and received $766 from the salesman Baker, which was the receipts for two days business.

After learning that the stock totalled approximately $25,000, the plaintiff refused to make further payments, abandoned the store and filed suit on August 27, 1945, to recover the $6,000. No transfer of the license had been made by defendant pending final payment and the execution and delivery of the mortgage on the real estate.

The plaintiff bases his action on his claim that he advised the defendant he had only $8,000 and the statement of the defendant that such sum would be sufficient to make all cash outlays called for by the contract, and that the defendant wilfully and maliciously concealed the value of the stock. He also pleads mutual mistake, that there was no meeting of the minds and failure of consideration.

The trial court found the facts for him on all counts, and in conclusion of law No. 1 held: "That said agreement, resting partly in writing and partly in parol does not violate the parol evidence rule."

The defendant assigns error on the admission of parol evidence to show a representation that $8,000 would be sufficient to make the cash payments, and the plaintiff answers that such evidence was admissible, but in any event its admission and consideration is not available as grounds of error as it was not raised below. An examination of the record shows that the defendant's attorney in his opening statement said: "Our theory is that there was a written contract made and entered into between the two men, after full inspection of the premises and the goods, wares and merchandise to be purchased. We think everything was embodied in the contract; it was well drawn and well written. * * *"

As the plaintiff was asked as to the amount of money he had to purchase the place, objection was made that it was immaterial but the court overruled the objection with the statement that if the testimony was not material it would not be considered. Then followed testimony in support of his claim that it was represented

$8,000 would be sufficient. On the question of whether the parties intended that their writing covered the entire contract, we here quote our approval in Locke v. Murdoch, 20 N.M. 522, 533, 534, 151 P. 298, 302, L.R.A. 1917B, 267, of Prof. Wigmore's statement on this point: "Although in form the witnesses may be allowed to recite the facts, yet in truth, the facts will afterwards be treated as immaterial and legally void, if the rule is held applicable. There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence of both sides; his decision here, pro or con, concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that if they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that, if they did, they are legally effective, and he then leaves to the jury the determination of facts whether they did take place. * * *"

The question was squarely raised in the defendant's requested findings of fact and conclusions of law, as well as in his exceptions to those made by the court.

■ The rule in New Mexico is stated in Locke v. Murdoch, supra, 20 N.M. 151 P. 300, as follows:

" 'But a complete, valid, written contract merges all prior and contemporaneous negotiations and agreements within its purview, and if the oral agreement is not really collateral, but is an element of the written contract, or tends to vary or contradict the same, either in its express provisions or legal import, it is inadmissible * * *'."

Further the Court there adopted Mr. Wigmore's approach in ascertaining whether the rule excluded the offered evidence and quoted that legal writer as follows:

" 'More correctly, the inquiry is whether the writing was intended to cover a certain subject of negotiation; * * * and one of the circumstances of decision will be whether the one subject is so associated with the others that they are in effect "parts" of the same transaction, and therefore, if reduced to writing at all, they must be governed by the same writing.

" 'The intent must be sought where always intent must be sought, * * * namely, in the conduct and language of the parties and the surrounding circumstances. The document alone will not suffice. * * *

" 'In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic negotiation is dealt with at all in the writing.

" 'If it is mentioned, covered, or dealt with in the writing, then presumably the

writing was meant to represent all of the transaction on that element; * * *. This test is the one used by the most careful judges, and is in contrast with the looser and incorrect inquiry * * * whether the alleged extrinsic negotiation contradicts the terms of the writing.' "

By the written contract the plaintiff assumed the contract with the Duke City Wine Co. and was to pay the defendant $3,600 on that account, was to pay $5,000 for the real estate and certain personal property payable $1,500 in cash and the remainder by note. To these items he has lodged no objection. Does the written contract cover the element of the purchase price of the liquor? Paragraph 3 reads: " 'That the purchase price of the stock of beer, wines, whiskey, gin and all other liquors, etc., shall be such sum as may aggregate the invoice price thereof on the 3d day of June, 1945, when the said parties are to inventory said stock, and such sum shall be paid in cash when the said inventory is completed, when and whereupon the second party is to take possession of the premises and the said stock.' "

To sustain plaintiff's contention we must let him add the following: "provided, however, the total cost of the truck and liquor shall in no event exceed the sum of $2,900.-00." Plainly this would add to the terms of the written instrument, and the court erred in holding the sales price of the liquor was limited by any such agreement.

The trial court also held the defendant liable for deceit and constructive fraud based upon the claimed assurance that the stock of liquors would not exceed the sum of $8,000, and the plaintiff claims such evidence is admissible on that theory of his case.

We passed upon this question in Alford v. Rowell, 44 N.M. 392, 103 P.2d 119, 122, where we said:

"The mere allegation of fraud does not constitute a blanket invitation to disregard utterly the parol evidence rule. The field for employing such evidence even where fraud is alleged, is not unlimited.

"If a parol contemporaneous agreement be the inducing cause of the written contract, or forms a part of the consideration therefor, and it appears the writing was executed on the faith of the parol agreement or representation, extrinsic evidence is admissible. In such cases, the real basis for its admission is to show fraud. The principle which admits such evidence under the conditions stated has no application, however, where the parol agreement relates directly to the subject of the written contract, even though it be alleged, as in the case at bar, that the written contract was signed upon the faith of the oral promises."

The contract in this case is plain, covers all phases of their deal and the claimed misrepresentation relates directly to the subject of the contract, that is, the price.

■ Even if such representations could be considered, it would avail the plaintiff nothing, as announced in Berrendo Irrigated Farms Co. v. Jacobs, 23 N.M. 290, 305, 168 P. 483, 487:

"The law is that where a vendee undertakes to make investigation of his own, and is given full means to ascertain all the facts, and is not prevented from making the examination as full as he likes, he cannot be heard to complain because he relied upon representations of the vendor if his purchase proves unsuccessful. In Page on Contracts, § 123, it is said:

" 'If the person to whom the false statements are made did not rely on them but investigates for himself, and acts and relies on his own knowledge, no fraud exists, if the falsity of such representations was or could be discovered thereby, and if no artifice was resorted to to prevent him from discovering the truth.' " See also 61 A.L.R. 493.

By his own admission the plaintiff has had many years experience in the liquor business, and as heretofore stated, examined the stock before opening negotiations for its purchase, helped all day with the inventory and then made the second payment. To accept his statement that he believed the stock would not exceed $2,900 (the amount that would be available) and sustain the judgment, we would be credulous indeed.

■ It is settled in this state by our decisions in Dunken v. Guess, 40 N.M. 156, 56 P.2d 1123, and Montgomery v. First Mortgage Co., 38 N.M. 148, 29 P.2d 331, that a defaulting vendee may not recover back his partial payments. In Dunken v. Guess we quoted with approval the following from Hansbrough v. Peck, 5 Wall, 497, 18 L.Ed. 520 [40 N.M. 156, 56 P.2d 1126]:
" 'No rule in respect to the contract is better settled than this: that the party who has advanced money or done an act in part performance of the agreement, and then stops short, and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.' "

The situation in which the plaintiff finds himself is aptly expressed in Montgomery v. First Mortgage Co., supra [38 N.M. 148, 29 P.2d 334], as follows: "No breach of the contract is shown to have occurred on the part of appellant when the vendee assumed to rescind it and assigned his cause of action. By his early attempt to rescind, he risked all."

■ The plaintiff devotes a considerable part of his brief in an argument that the defendant did not say at the trial he was ready to accept the balance of the purchase price and deliver the property. A sufficient answer to this argument is that the plaintiff did not make such a tender.

The judgment will be reversed and the case remanded to the District Court with instructions to dismiss the complaint and render judgment for the defendant for his costs, and it is so ordered.

BRICE, C. J. and LUJAN and SAD-LER, JJ., concur.