585 P.2d 1098

**Rudi WYRSCH, Plaintiff-Appellee,**

v.

**Rolf MILKE and Kenneth Blair, and Helen Moncreiff-Adams, Defendants-Appellants,**

**Helen Moncreiff-Adams, Defendant-Appellee.**

No. 3022.

Court of Appeals of New Mexico.

Aug. 15, 1978.

On Motion For Rehearing Sept. 28, 1978.

Eliu E. Romero, Taos, for defendants-appellants.

Bruce D. Black, Campbell, Bingaman & Black, P. A., Santa Fe, for appellee Helen Moncreiff-Adams.

Morton S. Simon, Friedland, Simon, Lopez & Vigil, Santa Fe, and Jacob Rabinowitz, New York, N.Y., for appellee Wyrsch.

## OPINION

SUTIN, Judge.

Defendants Milke and Blair (M & B) appeal from a judgment in favor of plaintiff, Wyrsch, and from a judgment in favor of cross-claimant, Adams. We affirm.

The trial court made extensive findings of fact, none of which are challenged by M & B. Therefore, these findings are binding on this Court on appeal. *State ex rel. Newsome v. Alarid*, 90 N.M. 790, 568 P.2d 1236 (1977). In fact, M & B in their brief do not attack any of the findings of the court.

A. *Wyrsch v. M & B is affirmed.*

The pertinent findings are summarized as follows:

On July 3, 1974, Milke entered into a written contract with Adams for the purchase of a business in Taos, New Mexico, one paragraph of which provided that Milke shall not convey the property without the prior written consent of Adams. At the time Milke entered into the contract, he had an undisclosed partner, Blair. M & B took possession of and operated the business.

On April 1, 1976, M & B entered into a written contract with Wyrsch, one paragraph of which provided that the contract was contingent upon M & B obtaining the written consent of Adams.

The total purchase price was $140,000 payable $34,000 on April 1, 1976, and monthly payments thereafter. The balance was due and payable on May 1, 1979.

The parties delayed closing the sale until April 15, 1976 due to M & B's failure to obtain the written consent of Adams. To protect Wyrsch's down payment of $34,000, M & B signed a promissory note in the sum of $34,000 payable to Wyrsch 60 days from April 15, 1976, or upon delivery to Wyrsch of a signed consent from Adams.

Wyrsch and M & B orally agreed that if M & B obtained the written consent of Adams to the sale within 60 days from April 15, 1976, then the $34,000 was to be

kept by M & B as the down payment under the contract. If M & B could not obtain the consent within the 60 days allotted, then M & B would repay the $34,000 to Wyrsch and the contract would not be consumated. Paragraph 7 of the contract stated that the agreement was contingent upon Adams' consent to the sale. After M & B executed the promissory note Wyrsch took possession of and operated the business.

At the end of the 60 days, on or about June 15, 1976, M & B had not succeeded in obtaining the consent.

M & B urged Wyrsch to remain in possession; that M & B would obtain the necessary consent from Adams within a reasonable period of time. Wyrsch remained in possession until October 2, 1976.

Adams had demanded from M & B a conditional consent under which M & B could convey the business to Wyrsch. Adams' consent that was withheld was not unreasonable. M & B told Adams that any conditional consent would be unacceptable. M & B continued to make payments on the Milke-Adams escrow until October 1, 1976, but failed to tender any payments for the months of October or November, 1976. Wyrsch tendered Adams a payment for October which Adams refused since it would indicate her unconditional consent to the M & B-Wyrsch contract.

On October 2, 1976, Adams gave notice to M & B and Wyrsch of M & B's default on the contract, which notices were received.

On October 2, 1976, Wyrsch advised M & B that due to the failure of Adams to give written consent to the transfer and sale of the business to him he considered the contract to be invalid due to M & B's failure to fulfill a material condition precedent within a reasonable time.

Wyrsch fulfilled all conditions required of him under the contract until such time as it became evident that M & B would not be able to comply with the condition precedent in the contract, i. e., obtaining the consent of Adams.

On November 22, 1976, Wyrsch instituted two separate lawsuits, one on the promisso-ry note and the other for recision of the contract, damages for breach of contract, and other relief. These claims were consolidated for trial.

M & B appear to contend that they had a "reasonable time" in which to obtain consent of Adams; that Wyrsch knew consent had not been acquired at the inception of, or at the time of entering into, the contract; that at this time, there was no evidence that M & B refused to comply with the requirement of obtaining Adams' consent; and that Wyrsch was in default at the time of filing his complaint. Therefore, M & B say the trial court erred in allowing a recision of the contract.

■ We are unable to follow the syllogistic reasoning of M & B. M & B had six months from April 1, 1976 to October 2, 1976 to obtain the written consent of Adams. Certainly, this was a "reasonable time." No default of Wyrsch occurred during this period of time. Wyrsch fulfilled all conditions required of him under the contract until he declared the contract invalid.

The agreement between M & B and Wyrsch was contingent upon M & B obtaining Adams' consent to the attempted transfer of interest.

■ "If an agreement is made subject to the consent of an additional party, it must be viewed as conditional and if the consent is not given, the agreement is not binding." *Watts v. Hogan,* 111 Ariz. 536, 534 P.2d 741, 743 (1975); *Coe v. State Farm Mut. Auto. Ins. Co.,* 66 Cal.App.3d 981, 136 Cal.Rptr. 331 (1977). "When, as in the present situation, two parties execute a contract with the understanding that the approval of a third party is necessary for the agreement to take effect, the contract is not complete until the third party has approved. Until that happens neither party is bound by the agreement." *Santa Clara-San Ben. Chap., Etc. v. Local U. No. 332, Etc.,* 40 Cal.App.3d 431, 114 Cal.Rptr. 909, 912 (1974).

■ M & B failed to perform a condition precedent and allowed the Adams' contract to reach a point of default. M & B knew that if the Adams' contract failed, their

contract with Wyrsch also failed. It was too late in the day for M & B to cast any blame on Wyrsch for the wrong committed by M & B.

M & B rely on *Keleher v. Ash*, 37 N.M. 263, 21 P.2d 94 (1933). This case holds that a purchaser of real property may not take advantage of his own default to claim a recision. We agree with that statement but find it inapplicable here; Wyrsch was not in default.

M & B also rely on cases which protect the vendor of real property. *Mountain View Corporation v. Horne*, 74 N.M. 540, 395 P.2d 676 (1964); *Montgomery v. First Mortgage Co.*, 38 N.M. 148, 29 P.2d 331 (1934); *Clark v. Ingle*, 58 N.M. 136, 266 P.2d 672 (1954). These cases hold that a purchaser cannot rescind a contract when the vendor can correct defects in title or otherwise make the title marketable *before the date set for performance*. As long as the vendor is not in default the purchaser cannot rescind because the purchaser can show no breach of contract. To construe the contract otherwise would unquestionably be harsh against a vendor.

The above mentioned cases do not support M & B's position. M & B did not perform in time and therefore breached the contract. They did not obtain Adams' consent within a reasonable time to fulfill the condition precedent which would have given rise to a binding contract.

 M & B are precluded from invoking equitable considerations because they have sullied the circumstances with their own "unclean hands." M & B sold the Taos business to Wyrsch without the consent of Adams, and, with knowledge that this was wrong, intentionally defaulted in payments. They obtained $34,000 from Wyrsch as a down payment, relied upon Wyrsch's tender as an excuse for their delinquency, failed to repay Wyrsch, and caused extensive litigation. This conduct does not fall within any equitable maxim or concept. Equity encourages courts to amend wrongs of this nature. On general principles, equity will prevent a party having knowledge of the just rights of another from defeating such

rights. Equity does not create a fetish of exactitude or technical niceties. It is concerned with ultimate consequences. The trial court correctly declared the M & B-Wyrsch contract null and void.

**B. *Adams v. M & B is affirmed.***

M & B made Adams a third party defendant. Adams "cross-claimed" against M & B to terminate their interest in the property.

The trial court found that on October 11, 1976, Adams sent a second Notice of Breach and Default to M & B which was received; that they had 60 days to cure the default. On December 14, 1976, Adams notified M & B of her intention to terminate the contract and filed an affidavit of M & B's default with the County Clerk of Taos County. Adams did not unreasonably withhold her consent; that the conditions she requested were fair and reasonable inasmuch as Adams, if she granted her unconditional consent, could personally be liable for liens and encumbrances incurred by Wyrsch in the event of default. Adams did not waive the provision of the contract requiring her consent, and M & B were not current at any time after October 1, 1976, on the monthly installments due under the Adams' contract.

M & B argue that Adams caused the default of M & B by refusing to accept Wyrsch's tender of payment of the October, 1976 installment due and owing from M & B; that Adams' notice of cancellation was premature. Relying on these claims, M & B argue the principle that equity disfavors forfeiture; that the trial court could not deprive M & B of its equitable ownership of the property. This argument is contrary to the findings of the trial court, without merit and without the citation of any authority.

M & B have ignored both an essential fact of the Adams-M & B contract and the rules of law applicable to that contract provision. Paragraph 19 of the Adams-M & B contract reads:

This contract of sale and the property described herein shall not be subject to conveyance, transfer or assignment by

the Buyer without the prior written consent of the Owners and Adams. Owners and Adams shall not unreasonably withhold their consent to a conveyance, transfer or assignment of the contract of sale or the property described herein.

■ This "consent provision" means that Adams had the right to determine with whom she would contract, and M & B did not have the right to thrust Wyrsch upon her without her consent. *Kinman v. Howard*, 465 S.W.2d 400 (Tex.Civ.App.1971); *Bethel v. Matthews*, 187 Wash. 175, 59 P.2d 1125 (1936). This right of Adams is held in high esteem. Even had Wyrsch tendered the full purchase price to Adams, Adams did not have to accept Wyrsch as an assignee of her contract with Milke. *Lockerby v. Amon*, 64 Wash. 24, 116 P. 463, 35 L.R. A.(N.S.) 1064, Ann.Cas.1913A, 228 (1911). In fact, it has been held that if Adams' husband accepted a payment from Wyrsch, this would not constitute consent unless M & B proved that Adams' husband acted as an agent of his wife. *Boyd v. Bondy*, 113 Wash. 384, 194 P. 393 (1920). M & B could not avoid their liability to Adams by assigning their contract obligation to Wyrsch. *Navin v. New Colonial Hotel*, 228 Ind. 128, 90 N.E.2d 128 (1950).

*Bethel, supra*, is directly in point. It denied an assignee in the position of Wyrsch any rights under a contract obtained without the consent of the owner. *Bethel* quoted the following from *Lockerby, supra* :

"Whatever may have been the reasons for reserving the right to decline to deal with an assignee, such reservation contravenes no rule of public policy, and is enforceable. We attach no importance to the clauses of the contract in which the word 'assignee' is used. They will be construed in the light of the whole contract, and, when so regarded, must be taken to mean such assignees as the vendor is willing to accept." [59 P.2d at 1128.]

■ It is obvious that Adams' refusal to accept Wyrsch's tender of payment did not cause M & B's default on the Adams-M & B contract. Even when Wyrsch made a tender of payment on October 2, 1976, he was not acting as M & B's agent and Wyrsch's tender did not excuse M & B's continued delinquency. M & B never sought to make the Adams' contract current from October 2, 1976 to May 4, 1977, a period of seven months that ended with the trial of the case. M & B cannot excuse this continued delinquency in reliance on Wyrsch's tender.

"He who seeks equity must do equity," and "He who will have equity done to him must do equity to the same person." Black's Law Dictionary (Rev. Fourth Ed.) page 850 (1968).

M & B decry the inequity of foreclosure as related to contracts. 17 Am.Jur.2d, *Contracts*, § 500 (1964). This section relates to judicial construction of forfeiture provisions in contracts. Its relationship to Wyrsch's tender of payment is a mystery.

Section 499 reads in part:

The law permits a person to make a contract which will result in a forfeiture; and when it is clear from the terms of the contract that the parties have so agreed, a court of law, as well as a court of equity, will enforce the forfeiture. Thus, the time of payment specified in a contract may be material and by its terms a failure to pay within that time may involve an absolute forfeiture; if it does, this forfeiture will not be relieved against, even in a court of equity.

■ Fairness, justness and right dealing is an equity concept that dominates all commercial practices and transactions. *Ott v. Keller*, 90 N.M. 1, 558 P.2d 613 (Ct.App. 1977).

Adams was on the right side of the coin. M & B were not.

Adams judgment against M & B is affirmed.

C. *The trial court did not abuse its discretion in procedural matters related to the hearing on the merits.*

The record shows that on December 14, 1976, the Honorable Thomas A. Donnelly of

the First Judicial District was designated to try this case in Taos, New Mexico. On December 15, 1976, a hearing was held on Order to Show Cause entered on November 24, 1975. By reason of this Order, M & B had been restrained from attempting to interfere with Wyrsch's possession of the property and also restrained from attempting to take control. M & B were ordered to show cause, if any they had, why the Order should not remain in effect.

At the December 15th hearing, the court announced that it would vacate its other cases to dispose of this matter promptly, and that it would set a prompt date for hearing on the merits. After some testimony by Wyrsch, the court recessed and reconvened on January 3, 1977. Additional testimony was taken, and the court gave notice of hearing on January 19. M & B gave notice of taking Wyrsch's deposition on January 14. On January 13, M & B filed a motion for continuance of the hearing because Wyrsch's attorneys could not attend the deposition and M & B could not go to trial without making proper discovery. On January 19, M & B's motion was heard. After the close of argument, the court announced that the case was scheduled to commence January 20, the following day; that it was in the best interests of all the parties that discovery take place; that the Wyrsch deposition take place January 20, at 9:00 a. m., and that the trial would start at 1:30 p. m.; that Wyrsch furnish M & B a xerox copy of official documents for review in advance of the deposition to allow M & B to prepare for the examination of Wyrsch; that the court's secretary would xerox the documents, and that counsel make all arrangements immediately for the place of the deposition. M & B thanked the court. The deposition of Wyrsch was not taken by M & B.

On January 20 the court reconvened. The trial began. During the hearing the court said:

> Gentlemen, I have tried to assist counsel in expediting the case and I have been repeatedly asked to take continuances and postponements. * * * I'd like to move this case along. *I have been told by all the parties that it is urgent that this matter be heard.* [Emphasis added.]

At the end of the day, the court recessed. On January 28, Adams moved the court that M & B employ an alternate attorney because their counsel was physically incapacitated and could not continue with the trial. The court reconvened on February 1 for a hearing on the motion. Assistant counsel of M & B who previously appeared in the case, informed the court that chief counsel would be unable to appear for a month. The court directed M & B to select an attorney of their choice, and ordered the trial to resume February 10, 1977, nine days later. On February 10, assistant counsel appeared and adequately represented M & B to the termination of the case. In fact, the court commended opposing counsel for the manner in which the case was presented.

In retrospect and upon reading the transcript, M & B argue that the court abused its discretion in two respects: (1) the denial of the right to make discovery until the morning before trial, and (2) assistant counsel was inducted into duty without proper familiarization with the proceedings and facts.

We recognize the importance of discovery before trial. But chief counsel had the right to depose Wyrsch without leave of court after the commencement of the action on November 22, 1976, § 21–1–1(26)(a), N.M.S.A.1953 (Repl.Vol. 4), by giving notice of the time and place. Rule 30. Furthermore, M & B do not point to any errors or omissions of assistant counsel that prejudiced M & B.

Because of the jeopardy in which the business had been placed, all parties urged the court to hear the case on the merits. The court used extraordinary diligence in meeting this emergency. M & B were not prejudiced. The trial court did not abuse its discretion.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.

ON MOTION FOR REHEARING

SUTIN, Judge.

On appeal, Adams claimed the right to an attorney fee from M & B for services rendered in this appeal. This claim was not decided in the original opinion.

Paragraph 8 of the Adams-Milke real estate contract reads:

In the event of a default by any of the parties hereto, all expenses and attorney fees of all other parties incident to such default shall be paid by the defaulting party.

 Of course, this clause is valid, *Budagher v. Sunnyland Enterprises, Inc.,* 90 N.M. 365, 563 P.2d 1158 (1977), *Shortle v. McCloskey,* 39 N.M. 273, 46 P.2d 50 (1935), and a contract which provides for payment of attorney fees by a defaulting party does cover attorney fees on appeal. *First National Bank of Santa Fe v. Wood,* 86 N.M. 165, 521 P.2d 127 (1974); *Cabot v. First National Bank of Santa Fe,* 81 N.M. 795, 474 P.2d 478 (1970). The Court's decision in *Cabot* is the majority approach to this issue. See Annot., 52 A.L.R.2d 863 (1957), *"Contractual provision for attorneys' fees as including allowance for services rendered upon appellate review"* and the A.L.R. Later Case Service on this topic.

 The original judgment is hereby modified only by awarding to Adams an attorney fee for $2,500 for services rendered in this appeal.

IT IS SO ORDERED.

HERNANDEZ, J., concurs.

LOPEZ, J., dissents.