138 P.2d 1019

## PATTEN v. SANTA FE NAT. LIFE INS. CO.

No. 4728.

Supreme Court of New Mexico.

June 21, 1943.

C. R. McIntosh, of Santa Fe, and Hugh B. Woodward and Lawson K. Stiff, both of Albuquerque, for appellant.

Don G. McCormick, of Hobbs, for appellee.

BICKLEY, Justice.

Appellee sued the appellant on a life insurance policy issued by it on January 11, 1936, upon the life of William Henry Patten, husband of appellee, in which policy plaintiff-appellee was named as beneficiary.

The defendant-appellant answered with denials and affirmative allegations. The plaintiff replied, denying certain matters in the answer, and alleged certain affirmative matter by way of rebuttal on the theory of estoppel to combat defendant's claim that the policy was not in force and effect on the date of the death of the insured, by reason of the failure to pay premiums as required by the policy.

Defendant demurred to the allegations of new matters set up in plaintiff's reply upon three specific grounds, the first being that said allegations, taken together with allegations of the plaintiff's complaint, are insufficient to invoke the doctrine of estoppel, assigning a number of reasons.

The district court overruled the demurrer as to all matters set forth in ground numbered 1 and sustained said demurrer as to all matters set forth in grounds numbered 2 and 3.

Defendant appealed from the ruling adverse to it and the plaintiff has assigned errors she relies upon under the provisions of Supreme Court Rule No. 17, sec. 2.

We will first review the assignments of error of the appellant.

The facts appearing in the pleadings bearing upon this issue, though they overlap somewhat in the issue presented by appellee, are as follows:

The insured died on the 15th of July, 1938. The policy on its face acknowledged receipt of the first annual premium

continuing said policy in force until January 11, 1937. The payment of the first annual premium was arranged by the allowance of a credit for legal services rendered by the insured who was a lawyer and by the acceptance of a promissory note executed by insured in the amount of $69.06, which note was later paid. The insured availed himself of an option in the policy to pay premiums quarterly, and had paid the four quarterly premiums falling due in the year 1937 and the first quarterly premium falling due on January 11, 1938. Official receipts of the company were promptly issued for such quarterly premiums. The insured failed to pay in cash the quarterly premium falling due on April 11, 1938, or within the grace period of 31 days thereafter and defendant alleges that said quarterly premium had not been paid at the time of insured's death on July 15, 1938. On May 11, 1938, one day prior to the expiration of the grace period, for the payment of the April 11, 1938, quarterly premium, the insured mailed to the defendant a duly signed promissory note in the amount of $34.53, with a letter of transmittal, as follows:

"May 11, 1938
"Santa Fe National Life Insurance Co.,
"Albuquerque, New Mexico
      "Re: Policy No. 2136
"Gentlemen:

"Please find enclosed herewith my note in the amount of $34.53, which is to take care of the premium on the above policy due as of this date. This note is due and payable on July 10, 1938.

"I trust that this method of payment is satisfactory.
            "Cordially yours,
            "(Signed)   W. H. Patten.
"ib/
"Encl."

On May 16, 1938, five days after the expiration of the grace period for the payment of the last mentioned quarterly premium, defendant returned the promissory note aforesaid and sent a form of "Application for Extension of Time for Payment of Premium". It is accompanied by a letter of transmittal, which is as follows:

                  "May 16, 1938
"Judge W. H. Patten
"Hobbs, New Mexico
            "Re: Policy No. 2136
"Dear Judge Patten:

"We wish to acknowledge your letter of May 11th, enclosing note for $34.53 in settlement of quarterly premium due April 11th.

"We are glad to *comply with your request and extend the payment of premium on this policy until July 10th* but we are returning the note because it is non-interest bearing and technically not acceptable. If you will kindly sign and return our own premium extension note which is enclosed that will be sufficient to take care of the situation. (Emphasis supplied.)

"With kindest personal regards, I am
            "Sincerely yours,
            "(Signed)   John S. Sherritt
  "JSS:A"   "President.

The application for extension of time contained certain provisions, terms and conditions, the material portions of which are as follows:

"I hereby apply to the Santa Fe National Life Insurance Company at Albuquerque, New Mexico, to extend the time for the payment of the premium of $34.53 due April 11, 1938, under Policy No. 2136 to July 11, 1938 and I hereby tender as a deposit, the sum of $———.

"It is understood and agreed that such extension, if granted, shall not become effective or binding unless and until accepted at the Home Office of the Company in Albuquerque, New Mexico, and if and when accepted it shall be subject to the terms and conditions stated below: * * *

"4. If said premium is not paid on or before its extended due date, all rights and privileges granted by the extension shall cease without notice on said extended due date, and the Policy shall be deemed to be void and to have terminated on the premium due date above stated."

Plaintiff alleged in her reply that defendant had previously allowed insured to pay premiums in any convenient manner; that the policy was originally sold on credit; that on one previous occasion, insured had paid two quarterly premiums by promissory note, which was thereafter paid, and had thereby established a custom or practice between the parties of payment on open account or by promissory note, and their course of dealings had led in-sured to believe the practice would be continued, and that he had relied on the continuance of that practice. Plaintiff further alleged that from May 16, 1938, and until the death of the insured, he was mortally ill, the illness affecting his eyesight to such an extent that he was unable to read; that upon receiving defendant's letter inclosing the extension note, he had signed said extension note and returned it to defendant without reading it or having it read to him. There is no allegation in the reply that plaintiff's physical condition at the time last mentioned was known to the defendant. Plaintiff then alleged: "Because of the statement of defendant in its letter of May 16, 1938, and because of the practice and custom formerly employed by the parties relative to payment of premiums by promissory note, and on open account, the assured believed that the instrument which he signed was a note as described by the letter and it had the same force and effect of a promissory note and relied upon the defendant to so treat it."

Plaintiff then alleged: "That had the instrument signed by the assured been a promissory note, as he was led to believe by the statements of defendant and by their previously adhered to practice and custom, *it would have operated as payment* of the quarterly premium due April 11, 1938, and said policy would still have been in full force and effect, within the grace period, on the date of the death of the insured on July 15, 1938." (Emphasis supplied.)

It is then alleged that defendant was and should be estopped to deny that said instrument (extension agreement) had the same force and effect as a promissory note and should be estopped to deny that the premium due April 11, 1938, was not paid and should be estopped to claim that said policy lapsed for nonpayment of premium.

While a demurrer admits the truth of facts well pleaded, it does not admit matters of opinion of the pleader. A demurrer does not admit facts which the court will take judicial notice are not true and a demurrer does not admit an alleged construction of an instrument in writing. 49 C.J. Pleading, § 545.

Keeping in mind such applicable presumptions as may be indulged upon review in support of the ruling of the trial court upon a demurrer, and with due regard to the well recognized principle that forfeitures are not favorites of the law, and keeping in mind also that the burden of proof is on the party alleging and relying upon an estoppel to establish all the facts necessary to constitute it and other considerations hereafter mentioned, we conclude that the district court erred in overruling the first section or point of the demurrer.

Whether or not, and to what extent, a note given for a premium, constitutes payment, involves many factors, including acceptance, absolute or conditional, custom and usage, waiver and estoppel, etc. Primarily, it may be stated generally that the intention of the parties, evidenced by the terms of the contract, and such explanatory circumstances as are properly relevant and admissible, viewed in the light of the applicable rules of construction, must govern. Thus, it is said that the payment of a premium by note may be either absolute or conditional, depending on the intention of the parties at the time of its execution, and, if absolute, the insurer accepts the liability of the party executing the note in satisfaction of the premium; but if conditional, the insurer, in case of nonpayment, may resort to its original right to demand payment of the premium; also, that whether a note was taken as an absolute and unconditional payment of premium, or as indicating a mere extension of time, is a question of fact to be determined by the provisions of the note and the attending circumstances. And it has been held that the sole question in cases of the character under consideration is whether the note was accepted as payment. See Couch, Cyc. of Insurance Law, § 654, where it is also stated: "This doctrine of non-payment, in the absence of an express agreement, proceeds on the ground that nothing can be justly considered as payment in fact but that which is in truth such, unless something else is expressly agreed to be received in its place. It is also in keeping with the familiar rule of law that a note given for a precedent debt will not, in the absence

of an agreement, express or implied, to that effect operate as an extinguishment of the debt, but merely as an extension of the time of payment."

The same text at section 654a discusses the effect of a note as payment where receipt is given. The author says: "The acceptance of a note for a premium due, accompanied by the delivery of a receipt for the premium, constitutes a payment sufficient to prevent a forfeiture."

At section 654d, Couch says: "The giving of a note for a premium is prima facie not a payment of the premium, but merely an extension of time for the payment until the maturity of the note. Acceptance of a premium note in response to a request by the insured for an extension of time, simply amounts to an extension of time, and waives nothing but present payments."

It is clear to us that the so-called extension agreement heretofore quoted, standing alone, would not constitute payment of the premium due April 11, 1938. Indeed, the plaintiff does not so contend. Turning now to the letter of the insured dated May 11, 1938, we construe it to be nothing more than an *offer* to pay the premium due on April 11, 1938, with the note of the insured. He wrote: "I trust that this method of payment is satisfactory."

That the offer of the insured was not satisfactory to the company is apparent from its response which said: "If you will kindly sign and return our own premium extension note which is inclosed, that will be sufficient to take care of the situation."

As a corollary to the proposition that the party setting up an estoppel must have acted in reliance upon the conduct or representations of the party sought to be estopped, it is as a general rule essential that the former should not only have been destitute of knowledge of the real facts as to the matter in controversy, but should have also been without convenient or ready means of acquiring such knowledge. One relying on an estoppel must have exercised such reasonable diligence as the circumstances of the case require. If he conducts himself with a careless indifference to means of information reasonably at hand or ignores highly suspicious circumstances which should warn him of danger, he cannot invoke the doctrine of estoppel. 21 C.J., Estoppel, § 131 and § 175; 31 C.J.S., Estoppel, § 71 and § 102; and see Dye v. Crary, 13 N.M. 439, 464, 85 P. 1038, 9 L.R.A.,N.S., 1136, and Chambers v. Bessent, 17 N.M. 487, 494, 134 P. 237. We have seen that the insured became familiar with the contents of the letter from the company, dated May 16, 1938, transmitting the extension agreement or note and was thus advised that the company proposed to "Extend the payment of premium on this policy until July 10th" if the insured would sign and return the extension agreement and should have been advised that the company treated

his letter of May 11, 1938, and the note accompanying same as a request for an extension of time to pay the overdue premium.

In view of the company's characterization of the paper he was invited to sign, it would seem that the insured was negligent in failing to inform himself of the contents of the paper before signing it. The circumstances alleged as an excuse for this indifference upon the part of the insured fail to impress us as being adequate in the absence of an allegation that the insurer had knowledge of insured's physical infirmities.

We have carefully considered the contentions and arguments of appellee to the effect that the trial court committed error against her in sustaining the demurrer as to matters set forth in sections II and III thereof and we find appellee's contentions to be without merit.

For the error in overruling the demurrer as to matters set forth in Section I of the demurrer, the judgment must be reversed, and the cause remanded with directions to sustain the demurrer to the plaintiff's reply to the defendant's amended answer and for such further proceedings as may be proper, not inconsistent herewith, and it is so ordered.

SADLER, C. J., and MABRY and BRICE, JJ., concur.

THREET, J., did not participate.