388 P.2d 50

**James J. MELFI, Plaintiff-Appellant,**

v.

**I. Reuben GOODMAN, Defendant-Appellee.**

**No. 7316.**

Supreme Court of New Mexico.

Dec. 30, 1963.

See also, 69 N.M. 488, 368 P.2d 582.

Schall, Sceresse, Underwood & Brown Norman Thayer, Albuquerque, for appellant.

Sanders & Bivins, Las Cruces, John W. Thompson, Ruidoso, for appellee.

MOISE, Justice.

This is a second appeal of this case. The first was disposed of by our opinion in Melfi v. Goodman, 69 N.M. 488, 368 P.2d 582.

The litigation arose out of the dealings of the parties in connection with the New Mexico Copper Corporation, both of them being stockholders therein.

On March 3, 1959, the appellee (defendant) held a judgment against the corporation, which together with court costs and interest amounted to $36,000.00, and on said date the assets of the corporation were to be sold by the sheriff of Lincoln County, New Mexico, pursuant to notice of execution sale.

At the same time, appellant (plaintiff) had advanced the corporation $8,000.00, and had agreed to advance an additional $24,-000.00 within the next year. A mortgage from the corporation was given on its property to secure the entire $32,000.00.

On that date, after considerable negotiating, the parties entered into a written agreement by the terms of which appellee agreed to sell his judgment to appellant for $36,000.00, payable $10,000.00 in cash and the balance in four equal installments of $6,500.00 each, without interest, payable at six months' intervals thereafter. As "additional security" the appellant agreed to assign his $32,000.00 mortgage mentioned above to appellee and to see that the corporation's mill and equipment was insured for not less than $25,000.00 with loss payable endorsement in favor of appellee. It was further agreed that there would be deposited in escrow with the Lincoln County Agency of the Citizens State Bank of Vaughn, New Mexico, the transcript of appellee's judgment, together with a duly executed assignment of it to appellant, an installment promissory note for $26,000.00, payable to appellee, and a reassignment of mortgage held by appellant, which was to be assigned to appellee as "additional security." In return, appellee agreed to forego execution of the judgment "provided the purchaser [appellant] makes all payments due him [appellee] according to the terms of this agreement." The contract further provided:

"After all payments have been made according to the terms of this agreement the Escrow Agent is instructed to deliver all of the papers herein to the Purchaser. Should the purchaser make default in any of these payments and remain in default for at least 30 days the Escrow Agent is instructed to deliver all papers to the Seller."

The mortgage was assigned to appellee, and the assignment duly recorded. The papers, as provided in the contract, were placed in escrow with the bank. The $10,000.00 payment was made on the date of the agreement and thereafter an additional $3,500.00 was paid on the installment maturing on September 3, 1959, and a $3,000.00 check delivered, but never collected because of insufficient funds to the credit of appellant in the bank.

After appellant was in default on the March, 1960 installment, in addition to the $3,000.00 for which payment had not been received on the September, 1959 installment, and was also in default on the agreement to provide insurance, appellee withdrew the escrow papers from the bank, executed on his judgment and purchased the corporation's property at sheriff's sale. It does not appear that any kind of notice was ever given by appellee to appellant of his intention to do so. Admittedly, appellee had not acted promptly on appellant's failure to pay according to the terms of the agreement, but in reliance on appellant's promises and importuning had long delayed in withdrawing the papers from escrow.

In December, 1960, appellant filed this suit claiming that appellee breached the escrow agreement by withdrawing the documents from the bank and attempting sale of the property under the execution, and asserting that the contract contained no forfeiture clause; that appellee had made no tender back of the $13,500.00 paid by appellant; and that because of default by the corporation in payments on the mortgage, appellee was about to foreclose the same. Appellant prayed that appellee be restrained from proceeding with the execution sale, or from entering the corporate property or removing anything therefrom; for return of the $13,500.00 paid by appellant and the mortgage reassignment. Appellee answered denying the material allegations of the complaint and asserted that the corporate property was owned by him through having executed the judgment. After trial, the court found the issues in favor of appellee and dismissed appellant's complaint. This appeal followed.

At the outset of the trial, counsel for appellant stated that his action was an equitable one for restitution by virtue of rescission on the part of appellee. Appellant's evidence at the trial and arguments here seem to be based on a theory of equity in that appellee should not be allowed to re-

tain both the consideration paid by appellant, and the corporate property.

Appellant's first point, which he describes as the "crux of the case," is addressed to claimed error in the court's finding No. 9 which reads:

"That said agreeement is vague and ambiguous as to the forefeiture of any payments made by plaintiff in the event of his breach of the agreement; that the unrefuted testimony reflects that both plaintiff and defendant intended that should plaintiff default at any time he would forfeit his rights under the agreement, including all monies and payments made by him at the time of such default and also the security given at the time of the execution of the agreement; and that both parties intended and regarded time to be of the essence in the making of the payments, and such was essential and material to the agreement. "

and the court's conclusion of law No. 3:

"That the said contract was breached; that he who seeks equity must come into court with clean hands and that there is no excusable or equitable reason for the nonperformance of this agreement by the plaintiff; that by the actions of the parties and their representation by attorneys and their understanding at the time the agreement was entered into, the plaintiff understood that should the agreement be breached, that he would forfeit all his rights thereunder; therefore, the plaintiff is not entitled to the relief he has prayed for in his Complaint and said Complaint is hereby dismissed and the writ of attachment hereby dissolved."

Further error and inconsistency is urged between the finding of no "*express* forfeiture,*" or "*express* time is of the essence" clauses and conclusion No. 3 quoted above to the effect that appellant understood that if he defaulted all of his rights under the contract would be forfeited.

The record discloses a situation where appellant took the position that the contract contained no forfeiture clause, and that parol evidence was not admissible to vary the terms of the agreement in this regard by showing the intention of the parties. Evidence was offered by appellee to establish the understanding of the parties, but upon objection being made thereto, some of the evidence was restricted. However, our examination discloses proof which is to our minds adequate and substantial to support the court's finding of intention, assuming the correctness of the court's conclusion that the contract was ambiguous. Compare Wester v. Trailmobile Co., 59 N.M. 73, 279 P.2d 526; Strickland v. Johnson, 21 N.M. 599, 157 P. 142. We would add, however, that in so holding we do not consider that the clause quoted above is in any sense

ambiguous. The language of the contract requires the same result. Quinlan v. St. John, 28 Wyo. 91, 201 P. 149, rehearing denied, 28 Wyo. 91, 203 P. 1088; also cases in note, 31 A.L.R.2d 8, 45.

■ Although we are in accord with appellant that forfeitures are not favored, Stamm v. Buchanan, 55 N.M. 127, 227 P.2d 633; Patten v. Santa Fe Nat. Life Ins. Co., 47 N.M. 202, 138 P.2d 1019; Martin v. New York Life Ins. Co., 30 N.M. 400, 234 P. 673, 40 A.L.R. 406, the position of appellant would result in effectively nullifying the specific agreement of the parties.

■ Appellant cites and places great reliance on the decision of this court in Morgan v. Thompson, 46 N.M. 282, 127 P.2d 1037, and particularly the statement quoted therefrom that "A mere breach of contract, without provision therein for its termination on such breach, does not authorize its cancellation." The case was one for cancellation of deeds for lack of consideration and because made by the grantor while mentally incompetent. The trial court ordered the deeds cancelled on the grounds stated. This court reversed, finding both consideration and that the grantor was not so incompetent as to justify cancellation of the deeds executed by him. The court made the statement quoted above in the course of discussing whether or not an absence or failure of consideration had been proved. No such issue is here

present, nor does the agreement here fall under the rule. The contract clearly states that upon the continuing of a default for 30 days, all escrow papers were to be delivered to appellee. What more needed to be said—"and a forfeiture will ensue" or "and the contract will be thereby terminated" or "and Seller (appellee) shall have full right to proceed to enforce the same"? We think such a result is implicit in the provision for delivery of the papers to appellee. To hold otherwise would be to make a new contract for the parties. The language used is not susceptible of any meaning except that found by the court.

None of the New Mexico decisions cited supra are of any assistance to appellant. They all announce as the rule that forfeitures are not favored, but determine nothing beyond the applicability of this rule to the facts of each case.

We note the argument that there had been a waiver of strict performance by appellee, citing Martin v. New York Life Ins. Co., supra. This case involved the question of whether a worthless check had been accepted as a premium payment by the insurance company so as to be considered a waiver of the right to forfeit the policy for nonpayment. The court applied the rule holding forfeitures not to be favored, and accordingly determined that there had been a waiver. Although we express no opinion on the specific

point, this holding might have had some application in connection with the September 3, 1959 payment, when appellee received a $3,000.00 check which had never been paid by the bank; certainly it cannot be asserted as to the later defaults in March and September, 1960 where checks were offered but refused. The case of Hittson v. Chicago, R. I. & P. Ry. Co., 43 N.M. 122, 86 P.2d 1037, announces a rule as to waivers which is of universal acceptance, but as stated above, is to our minds of no assistance under the instant facts.

■ Neither can a prior course of conduct which would result in an equitable estoppel such as was present in Patten v. Santa Fe Nat. Life Ins. Co., supra, be claimed here. The taking of post dated checks to satisfy one past due installment certainly could not have established a course of conduct upon which appellant had a right to rely. Particularly is this true where the appellee consistently, over a period of several months, refused to accede to a repetition of this practice. Boone v. Templeman, 158 Cal. 290, 110 P. 947; see note, 107 A.L.R. 345, 367.

Although appellant argues that the absence of an express forfeiture provision requires a reversal, we do not so view the case. See Baker v. Fell, 135 Tex. 375, 144 S.W.2d 255; Smith v. McKnight (Tex. Civ.App.1951) 240 S.W.2d 368. The true

issue to our minds simply concerns the right of a defaulting purchaser to a return of his money, or to be placed in status quo when he has defaulted on his contract through failure to make the agreed payments, and the vendor is in turn ready, willing and able to perform and is himself not in default. The rule has been clearly stated as denying such a right in a vendee in Dunken v. Guess, 40 N.M. 156, 56 P.2d 1123, at least when certain equitable considerations are not present. See, also, Bell v. Lammon, 51 N.M. 113, 179 P.2d 757; Rudy v. Newman, 54 N. M. 230, 220 P.2d 489; notes in 59 A.L.R. 189, 194; 102 A.L.R. 852, 854; 134 A.L.R. 1064, 1067; 31 A.L.R.2d 8, 96. Also compare Cochran v. Gordon, 69 N.M. 346, 367 P.2d 526.

In Dunken v. Guess, supra, we stated:

"* * * In Glock v. Howard & Wilson Colony Co., 123 Cal. 1, 55 P. 713, 43 L.R.A. 199, 69 Am.St.Rep. 17, in a well considered opinion, it was decided: 'If a vendee does not complete his payments as stipulated in his contract to purchase, the vendor may always retain the moneys received by him, unless the vendee shows some equitable ground for relief, and it is not material whether or not the contract stipulated that the vendor might retain such moneys.'

"The court said: 'When an equitable showing is not made to excuse the

breach, the vendor has the right in equity, as he always has at law, to retain the moneys paid by the vendee.'

"The court quoted the language of the Supreme Court of the United States employed in Hansbrough v. Peck, 5 Wall. 497, 18 L.Ed. 520, as follows: 'No rule in respect to the contract is better settled than this: that the party who has advanced money or done an act in part performance of the agreement, and then stops short, and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done.' "

This accords with the rule generally applied by the courts, as witness the following quoted from 31 A.L.R.2d 8, 96:

"Under the rule generally prevailing in this country (subject to such questions of waiver or suspension of right or requirements of notice or declaration as may arise) a vendor not in default may in the event of default by the vendee, amounting to a total breach, elect not only to abandon performance on his part but also to retain as forfeited all money paid to him on the contract, even though the instrument contains no forfeiture provision or the forfeiture provision included therein is to be deemed invalid."

As regards any question concerning the time that must elapse before an escrow is terminated by a vendor because of default by a vendee, and without notice, it would appear that performance must be accomplished within the time provided in the escrow, or absent a stipulation as to time, it must be within a reasonable time. Hoppin v. Munsey, 185 Cal. 678, 198 P. 398; Jameson v. Shepardson, 83 Cal.App. 596, 257 P. 157; Bott v. Wright, 62 Tex. Civ.App. 632, 132 S.W. 960. In the instant case, the papers were not withdrawn from escrow until after plaintiff was several months in default on the second installment. Certainly it could not be claimed that the time elapsed was unreasonably short.

Point II claims error in the court's finding of notice of default and failure to cure the same. Appellant argues that the only writing in evidence cannot be construed as notice. With this we agree. We must also agree that so far as we can determine there is no evidence of any notice of any kind, and accordingly the finding is not supported. But, was a notice required before defendant could withdraw the papers from escrow? On the authority cited in our discussion of Point I and those following, we must conclude that it was not. The error in making a finding which was immaterial to the decision in the case was harmless error and cannot be the basis for a reversal. Alexander v. Cowart, 58 N.M.

395, 271 P.2d 1005; Ranfro v. J. D. Coggins Company, 71 N.M. 310, 378 P.2d 130.

■ Appellant relies on the case of Chin Ott Wong v. Title Insurance & Trust Co., 89 Cal.App.2d 183, 200 P.2d 541. To our minds the rule there announced has no application under the facts of this case. In that case time was made of the essence and this requirement had been waived by repeated acceptance of past due payments. In the present case no late payments were accepted. True, defendant took three post dated checks in payment of the September 3, 1959 installment, two of which were not cashed until November and December, 1959, and the third never cashed. An isolated circumstance of accepting a late payment does not amount to a waiver of a right to declare a forfeiture without notice. That a duty to give such notice declaring a forfeiture arises from the repeated acceptance of late payments is the clear holding of Boone v. Templeman, supra. See also, Stevinson v. Joy, 164 Cal. 279, 128 P. 751; Pearson v. Brown, 27 Cal.App. 125, 148 P. 956; Burmester v. Horn, 35 Cal.App. 549, 170 P. 674; 31 A.L.R.2d 8, 112.

Likewise, we do not consider the decision of this court in Barnett v. Wedgewood, 28 N.M. 312, 211 P. 601, cited by defendant to be in point. That case merely held § 591, Code 1915 (§ 50–7–3, N.M.S.A. 1953) not applicable under the facts there. This section provided that until demand for performance is made, and if refused, a reasonable time given to perform, contracts for labor and for payment or delivery of property where no time for performance is fixed, may not be converted into a money demand. The action was one for conversion of mortgaged cattle. The holding has no application here. No claim is made that § 50–7–3, N.M.S.A.1953, has any application or pertinency.

We would call attention to the rule announced in Freedman v. Rector, Wardens & Vestrymen of St. Matthias Parish, 37 Cal.2d 16, 230 P.2d 629, 31 A.L.R.2d 1. There the Supreme Court of California announced an exception to the rule of Glock v. Howard & Wilson Colony Co., 123 Cal. 1, 55 P. 713, 43 L.R.A. 199, relied on and quoted from by us in Dunken v. Guess, supra. The exception arises when the proof discloses that to allow retention of a vendee's payments would in effect mean that a vendor is collecting punitive damages. In such circumstances a vendee may recover back amounts paid in excess of actual damages of the vendor. Our case presents no proof of profit to appellee through the default of appellant, and absent any equitable consideration, the general rule already noted does not permit recovery by the vendee. For aught that appears, appellee may never have disposed of the property and could have delivered it, or the judgment and mortgage, at any time, if appellant had paid what he agreed to pay. How-

ever, no such offer was ever forthcoming, and now it is certainly too late. We see no equity in appellant's position, nor reason to deviate from the general rule and our previous holdings. Compare Rudy v. Newman supra; Quinlan v. St. John, supra.

As his Point III, appellant asserts error on the part of the trial court in refusing to find that appellee had a plain, speedy and adequate remedy at law and that accordingly appellee's execution of the judgment was an abrogation of the agreement and that appellant's only remedy is in equity, and in failing to conclude that appellant should have prevailed.

■ Assuming that appellee could have proceeded to sue on his notes and to obtain judgment at law, we do not see how it follows that he did not have the right to act as he did. Appellant had defaulted in the promised payments. All necessary documents for prompt satisfaction of appellee's claim were in escrow, and were delivered to him. Appellant does not claim that the escrow bank violated any duty in doing so. When the parties had contracted specifically to make possible exactly what resulted, we fail to appreciate that appellant has any cause for complaint, or that there was any error in the court's refusal of the tendered findings and conclusions.

Appellant's final point concerns asserted waiver of prompt payment and claimed offers of checks made by appellant at variance from his contract agreements. These arguments have been disposed of in our discussion of previous points and additional comment is deemed unnecessary.

It follows from what has been said that the judgment of the trial court is free from reversible error and should be affirmed.

It is so ordered.

COMPTON, C. J., and NOBLE, J., concur.