**Alton B. RANEY and D. P. Raney, Administrators of the Estate of Thomas Jefferson Raney, Jr., Deceased, Appellants,**

v.

**PIEDMONT SOUTHERN LIFE INSURANCE COMPANY,**
**Appellees.**

**No. 18752.**

United States Court of Appeals
Eighth Circuit.

Dec. 19, 1967.

E. L. McHaney, of Owens, McHaney & McHaney, Little Rock, Ark., for appellant; James M. McHaney, Little Rock, Ark., of the same firm was with him on the brief.

A. F. House, Little Rock, Ark., for appellee; Robert S. Wiggins, Atlanta, Ga., was with him on the brief.

Before VOGEL, Chief Judge and MATTHES and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

On August 12, 1965 Dr. Thomas J. Raney died as the result of an automobile accident. Subsequently, his administrators, hereinafter plaintiffs, filed suit to recover double indemnity under a policy of life insurance issued by defendant, Piedmont Southern Life Insurance Company, hereinafter Company, on the life of Dr. Raney in the amount of $40,000.00. The Company resisted payment on the ground that the policy had lapsed for nonpayment of premiums. The trial resulted in a verdict for the Company. From the judgment entered thereon, plaintiffs have appealed. Jurisdiction has been established.

The sole question for our determination is whether the trial court erred in denying plaintiffs' motion for a directed verdict, which was grounded on the theory that the policy was not forfeited for nonpayment of premiums since the Company had accepted Dr. Raney's promissory note in payment of those premiums.

In December, 1964 Dr. Raney applied for a mortgage loan on his residence in the amount of $40,000.00 and a $95,000.00 loan on his clinic building. The Company rejected a loan on the clinic, but on February 15, 1965 did approve Dr. Raney's application for a $40,000.00 loan, subject to his purchase of insurance in an amount equivalent to the loan. Accordingly, the Company made the loan and simultaneously issued two life insurance policies in the amount of $40,000.00 and $90,000.00, respectively, the former of which Dr. Raney assigned to the Company as collateral security for the loan. As evidence of his indebtedness Dr. Raney executed a promissory note secured by a mortgage on his home, providing for repayment of the $40,000.00 in 240 successive monthly installments of $446.36 each at 5½% interest, beginning April 15, 1965. As provided in the note, each installment included:

"a. A payment on account of the principal of said loan;

b. Interest at the rate above provided for on the monthly decreasing principal balance; and also

c. The monthly premium or premiums of One Hundred Seventy One and 20/100 Dollars ($171.20) payable on certain policy or policies of life insurance issued by said corporation and assigned to said corporation as collateral security for the payment of said loan." [1]

Prior to the closing of the loan, the Company advised Dr. Raney that a portion of his initial deposit of $762.00 would be applied to the payment of the premium due on each policy. Thereafter, Dr. Raney paid no premiums on the $90,000.00 policy,[2] but did make two payments on May 6th and June 11th, respectively, in the sum of $418.36 each, which were applied in accordance with the provisions of the note. No other payments were made by Dr. Raney. The Company repeatedly sent premium notices, lapse notices, mortgage installment notices and late payment reminders to Dr. Raney without avail. Finally on August 3, 1965 the Company declared the loan in default, but offered to reinstate it if the delinquent installments were paid within ten days. No part of the amount overdue, however, was paid prior to Dr. Raney's death on August 12th.

After all the evidence had been submitted, plaintiffs, for the first time, advanced the theory, which they press on appeal, that the Company had unconditionally accepted Dr. Raney's $40,000.00 note in payment of all premiums accruing on the $40,000.00 policy. They argue that upon default in payment of the monthly installments due on the note, which, as stated, included a monthly premium of $143.20, the Company could not declare the policy forfeited for non payment of premiums, but could only resort to the relief provided by the provisions of the note and mortgage for nonpayment of the loan installments, namely foreclosure, and not the lapse provisions of the policy for nonpayment of premiums.

As thus presented, the narrow question for our determination is whether, as a matter of law, the secured note constituted payment of the premiums accruing on the $40,000.00 policy, thus precluding the Company from declaring a forfeiture on the policy.

▮ The mode and method of payment of insurance premiums has been the subject of numerous cases. We need not engage in an extended discussion of the many relevant authorities to recognize the generally accepted proposition that an insured's obligation to pay premiums under a policy of insurance may be satisfied by the giving of a promissory note. Security State Fire Insurance Co. v. Kelley, 215 Ark. 453, 221 S.W.2d 39, 40–41 (1949); Robnett v. Cotton States Life Ins. Co., 148 Ark. 199, 230 S.W. 257, 259 (1921). See also State Insurance Com'r v. Allstate Insurance Company, 221 Or. 371, 351 P.2d 433, 439 (1960); Progressive Life Ins. Co. v. Reeves, 89 Ga.App. 900, 81 S.E.2d 519, 520–521 (1954); Gunter v. Philadelphia Life Ins. Co., 130 S.C. 1, 125 S.E. 285, 287 (1924); 15 Appleman, Insurance Law and Practice § 8421 (1944). In such an instance the insurer may waive the payment of a

1. By reason of the premium provisions in this policy, however, the total monthly premium during the first three years of the policy was $143.20, rather than $171.-20, thus making the total monthly payment during this period, $418.36.

2. An examination of the original files and record in this case discloses that the sole factual issue litigated and submitted to the jury was whether Dr. Raney had in fact accepted delivery of both the $40,-000.00 and $90,000.00 policies. Plaintiffs' trial theory was that the $90,000.-

00 policy had not been delivered and accepted by Dr. Raney and that the Company wrongfully applied a portion of his $762.00 initial deposit to that policy. They argued that if all of the advance deposit, except $150.00 representing an appraisal fee, had been applied to the payment of premiums on the $40,000.00 policy, that policy would have been in force at the time of Dr. Raney's death. The jury resolved this issue against plaintiffs on concededly proper instructions to which no exception was taken.

premium in cash in advance by accepting in lieu thereof premium notes, sometimes referred to as "blue notes." Acceptance of such a premium note normally waives the insurer's right to forfeit the policy by reason of the insured's failure to pay the premium when due. To what extent a note given in conjunction with the acquisition of a loan and the procurement of a policy of life insurance does or does not constitute payment of a premium involves several factors, chief among which is whether the insurer has accepted the note as absolute or conditional payment of the premium or as mere evidence of the loan indebtedness. See, e. g., Patten v. Santa Fe Nat. Life Ins. Co., 47 N.M. 202, 138 P.2d 1019, 1022 (1943); 14 Appleman, Insurance Law and Practice § 8031 (1944). In construing the effect to be given a promissory note the intention of the parties as evidenced by the contract of insurance, the note and other explanatory circumstances must govern. Where a note has been executed in connection with the purchase of insurance the question whether that instrument unconditionally constitutes payment of the premiums ordinarily presents an issue of fact for the jury and not a question of law for the court.

Proceeding on this legal premise we encounter little difficulty in concluding there has been a decisive failure of proof to sustain plaintiffs' position that as a matter of law the Company accepted Dr. Raney's note in payment of the premiums due.

Plaintiffs argue that the inclusion of a monthly premium of $143.20 as part of each loan installment of $418.36 due on the note irrefutably demonstrates support for their contention. We disagree. Even if we viewed the provision relating to the allocation of the amount paid in isolation and out of context, we cannot, as a matter of law, interpret it as conclusively establishing that the note was unconditionally accepted by the Company in payment of the premiums.

We consider, however, the note in its entirety in conjunction with the contemporaneous mortgage and the provisions of the policy in order to resolve the question at hand. John Hancock Mutual Life Insurance Company v. Tuggle, 303 F.2d 113, 115 (10th Cir. 1962); Guaranty Financial Corporation v. Harden, 242 Ark. 779, 416 S.W.2d 287, 288 (1967); Gowen v. Sullins, 212 Ark. 824, 208 S.W. 2d 450, 452 (1948). "The simultaneous delivery of the policy of insurance, the receipt for the premium, and the note for the premium, constitute a single contract which should be read together." Home Life & Accident Company v. Haskins, 156 Ark. 77, 245 S.W. 181, 183 (1922).

The ambiguities inherent in construing the present policy and note are augmented by the absence of any statement or provision in the note to the effect that it constituted a form of substitute payment for the premiums accruing on the policy. To the contrary, the note explicitly provides that: "We [the makers] promise to pay whenever due all premiums under all of the life insurance policies, assigned as collateral security for the payment of said loan * * * ." Likewise, the deed of trust or mortgage securing the note provided that the " * * * parties of the first part [Dr. Raney and his wife] further covenant that they will * * * keep in full force and effect that certain policy of life insurance issued by Piedmont Southern Life Insurance Company and described in said note * * ` *." Nothing appears in the deed of trust to indicate that the note was accepted in payment of the premiums, but by its very terms the deed of trust purports to secure only the principal and interest payable under the note in monthly installments of $275.16.

The policy itself unequivocally obligated the insured to pay the monthly premium in advance, and stated that "if any premium is not paid when due, such premium shall be in default, and at the expiration of the grace period * * *, this Policy shall lapse as of the date to which the premiums have been paid * * *." Like the note and deed of trust, the policy does not expressly or by implication recite that the note was

accepted as the mode of payment for the premiums.

Entirely apart from an analysis of the foregoing documents the events that transpired subsequent to the issuance of the policy refute the soundness of plaintiffs' theory. Prior to his default Dr. Raney tardily paid two installments on the note in the amount of $418.36 each. This failure to timely remit the mortgage loan and insurance premiums due occasioned the Company to notify Dr. Raney of a default in his payments.[3] The Company periodically sent out individual notices of premiums due on the policy as well as late payment reminders with respect to Dr. Raney's mortgage loan payments. In light of these circumstances we find it difficult to believe that the parties unequivocably viewed the effect of the entire transaction in the light encompassed by plaintiffs' theory.

 Further discussion of this problem would be of little benefit. We have carefully considered plaintiffs' approach and have reviewed the cases cited in support of their theory. As is frequently the situation, cases of this nature must be considered and determined on an ad hoc basis. We note that plaintiffs' theory does have a certain ring of plausability to it and that the law supports their general theme that a note may constitute the appropriate mode of payment for a premium. Yet the documents and circumstances of this case are inconclusive on the question of the Company's acceptance of the note as a method of payment. Certainly, in our position as a reviewing Court, we cannot say as a matter of law that the Company unconditionally accepted Dr. Raney's note to that end.

Plaintiffs endeavored to convince the jury that Dr. Raney had purchased only the $40,000.00 policy and that his $762.00 advance payment had been improperly allocated by the Company to the payment of premiums that had accrued on the $90,000.00 policy. Under proper instructions the jury resolved this issue against the plaintiffs, and they claim no error in that regard. At the conclusion of all the evidence plaintiffs attempted to submit an entirely new theory to the trial court. Judge Henley was not persuaded to accept this alternative position. Neither are we. We note in passing that plaintiffs did not request that their alternative ground for recovery be submitted to the jury.

Finding no basis for holding that as a matter of law the policy was in force and effect at the time of Dr. Raney's death, the judgment must be and is affirmed.

---

3. The printed record contains copies of six notices of premiums due that were sent to Dr. Raney.