558 P.2d 613

Pierre J. OTT and Beverly J. Ott, his wife, Plaintiffs-Appellees,

v.

Conrad F. KELLER and Lillie A. Keller, his wife, Defendants-Appellants.

No. 2578.

Court of Appeals of New Mexico.

Dec. 14, 1976.

Thomas F. Hooker, Jr., Keith & Matthews, P. C., Albuquerque, for defendants-appellants.

Richard J. Grodner, Prelo & Grodner, Albuquerque, for plaintiffs-appellees.

## OPINION

SUTIN, Judge.

Defendants appeal from a judgment based upon a claim of unlawful detainer and eviction brought by plaintiffs against defendants. We reverse.

### A. *Findings of Fact and Conclusions of Law*

The trial court found:

On October 10, 1975, plaintiffs, as owners, and defendants, as purchasers, entered into a real estate contract for the purchase of plaintiffs' residence in Albuquerque, New Mexico. The pertinent parts of the contract are:

(1) The purchase price was $46,000.00. Defendants assumed and agreed to pay a mortgage held by the Albuquerque Federal Savings and Loan Association. Payments of $242.00 per month on the mortgage began on November 1, 1975.

(2) Defendants also agreed to pay plaintiffs' "equity" at the rate of $118.00 per month beginning on December 15, 1975.

(3) The Albuquerque National Bank was appointed escrow agent to collect the payments provided for in the contract, and to disburse $242.00 in payment of the mortgage and $118.00 to plaintiffs.

(4) On the matter of default, the contract provided:

> Should the Purchaser fail to make any of the said payments at the respective times herein specified, . . . *and continue in default for fifteen (15) days after written demand for such payments . . . has been mailed to the Purchaser . . .* , then the Owner may . . . terminate this contract and retain all sums theretofore paid hereunder as rental to that date for the use of said premises, and all rights of the Purchaser . . . shall thereupon cease and terminate and *they shall thereafter be deemed a tenant holding over after the expiration of their term without permission.* [Emphasis added].

The court further found that defendants did not make the February 1, 1976 payment of $242.00 on the mortgage; that on February 4, 1976, plaintiffs' agent mailed a written demand to defendants to pay the $242.00; that the defendants did not make the payment on or before February 19, 1976; that on February 20, 1976, plaintiffs elected to terminate the contract and retain all sums theretofore paid under it as rental ($9,968.25) for the use of the premises, and further terminated all rights of the defendants in the premises; that since February 20, 1976, defendants were tenants holding over after the expiration of their term without permission and after the termination of their tenancy; that on February 20, 1976, a letter of eviction was hand-delivered to the defendants, and the defendants refused and failed to vacate the premises.

The court concluded in pertinent part that it had jurisdiction of the parties and the subject matter; that defendants breached the contract; that by failing to leave the premises, defendants committed the act of unlawful detainer; that plaintiffs were entitled to attorney fees of $250.00 and costs for bringing the action; and that plaintiffs were entitled to have the Sheriff

of Bernalillo County remove the defendants from the premises.

B. *The trial court lacked jurisdiction over the subject matter.*

The appeal concerns unlawful detainer. Sections 36–12–1 through 36–12–4, N.M. S.A.1953 (2nd Repl. Vol. 6). . . .

. . . . .

The action for unlawful detainer is purely statutory and is restricted in its operation to the situations specified in the statute. *Henderson v. Gibbany*, 76 N.M. 674, 417 P.2d 807 (1966). The relief available is possession of the premises and damages. Section 36–12–3, supra.

. . . . .

*Kassel v. Anderson*, 84 N.M. 697, 698, 507 P.2d 444, 445 (Ct.App.1973).

■ Unlawful detainer is a summary proceeding. An equitable owner under a real estate contract cannot be ousted from possession by a summary proceeding, and the question of title to land cannot be determined in an unlawful detainer action. *Reinhart v. Lindholm*, 84 N.M. 546, 505 P.2d 1222 (1972). The parties must litigate the question of title in a more suitable form of action. *McCracken v. Wright*, 159 Kan. 615, 157 P.2d 814 (1945).

■ Forcible entry or unlawful detainer settles nothing between the parties. It does not determine title to the property or the absolute right to possession. A judgment has only the effect of placing the parties in their original positions prior to the forcible entry or unlawful detainer. *Heron v. Ramsey*, 45 N.M. 491, 117 P.2d 247 (1941); *Heron v. Kelly*, 48 N.M. 123, 146 P.2d 851 (1944).

Section 36–12–1(2) provides that in unlawful detainer, the facts must show that:

the defendant holds over after the termination, or contrary to the terms of, his lease or tenancy;

Plaintiffs contend that subsection (2) applies because the real estate contract recites that a purchaser in default "shall *thereafter* be deemed a tenant holding over after the expiration of their term without permission." [Emphasis added]. We disagree. A real estate contract is not a lease or tenancy. It does not involve a landlord-tenant relationship during the existence of the contract, and the contract cannot, after default, transform a vendor-vendee relationship into one of landlord-tenant.

■■ The statute comprehends a landlord-tenant relationship, and an unlawful detainer action does not arise out of a vendor-vendee relationship, *Phoenix-Sunflower Industries, Inc. v. Hughes*, 105 Ariz. 334, 464 P.2d 617 (1970); *McCracken v. Wright*, supra, because the vendee in possession is not a tenant in any sense of the word, and a default does not make him a tenant. *Coe v. Bennett*, 39 Idaho 176, 226 P. 736 (1924); *Steffens v. Smith*, 477 P.2d 119 (Wyo.1970).

■ The trial court lacked jurisdiction over the subject matter. *Steffens v. Smith*, supra; *Phoenix-Sunflower Industries, Inc. v. Hughes*, supra. Lack of jurisdiction is fatal to the judgment. *State ex rel. Overton v. New Mexico State Tax Com'n*, 81 N.M. 28, 462 P.2d 613 (1969).

C. *The proceedings in unlawful detainer were inequitable to defendants.*

On February 26, 1976, plaintiffs filed their complaint. On March 1, 1976, plaintiffs requested a hearing on unlawful detainer; the estimated total time required was stated to be 15 minutes. The trial court set the hearing on March 8, 1976, at 1:15 p. m., twelve days after the complaint was filed.

On March 8, 1976, defendants filed an answer with seven affirmative defenses, *a counterclaim with eleven separate counts*, and a demand for jury trial. In the afternoon, the 15-minute summary hearing transformed into a full-blown trial on plaintiffs' claim of unlawful detainer only. Defendants were forced to offer evidence in the record over objections of the plaintiffs, which objections were sustained. At this time, defendants had paid the sum of $9,968.25 toward the total purchase price. At the close of the evidence, the trial court

**4**

terminated defendants' contract, evicted the defendants from their residence, forfeited all sums paid, and ordered defendants to pay plaintiffs' attorney fees and costs.

Defendants' counterclaim and demand for a jury trial, which were disregarded by the trial court, remain in issue before the Court.

■ *First, unlawful detainer is a summary proceeding.* When a summary proceeding, which on its face deprives an equitable owner of title to the property, causes a forfeiture of 25% of the purchase price, and an eviction of the defendants from the premises, and appears to be inequitable, the law and the facts should be viewed with care and caution through a spyglass. Forfeitures are not favored. *Melfi v. Goodman,* 73 N.M. 320, 388 P.2d 50 (1963). This litigation arose out of a claimed one-day default in payment of $242.00 on *an assumed mortgage,* and not on plaintiffs' "equity." It is seriously questioned whether this default triggers a default of the real estate contract. Furthermore, plaintiffs violated the terms of their contract by terminating the escrow account upon a claimed one-day default. The time that elapsed was unreasonably short. *Melfi v. Goodman,* supra. The remedy sought, on its face, was inequitable in the field of commercial contracts and practices thereunder.

■ *Second, equity is defined in Black's Law Dictionary 634 (Rev. 4th ed. 1968) as follows:*

In its broadest and most general signification, this term denotes the spirit and the habit of fairness, justness, and right dealing which would regulate the intercourse of men with men,—the rule of doing to all others as we desire them to do to us; or, as it is expressed by Justinian, "to live honestly, to harm nobody, to render to every man his due." Inst. 1, 1, 3. It is therefore the synonym of natural right or justice. But in this sense its obligation is ethical rather than jural, and its discussion belongs to the sphere of morals. It is grounded in the precepts of the conscience, not in any sanction of positive law.

This precept should dominate all commercial transactions and practices.

■ *Third, defendants were not delinquent in payment.* On February 4, 1976, plaintiffs mailed a notice of default to defendants, by certified mail, return receipt requested, for failure to make the February 1, 1976 payment. Plaintiffs failed to prove that this letter was received by defendants. The envelope containing the notice of default was returned to the sender. No return receipt was placed of record, and defendants denied receipt of the letter. It is apparent that the trial court believed that a letter mailed is a letter received the following day; that the 15-day notice to pay, mailed on February 4, 1976, expired on February 19, 1976. Under prevailing postal delivery, we cannot accept per se the conclusiveness of this one-day delivery.

Nevertheless, we believe that the notice given did not make February 19, 1976 the final date upon which payment had to be made. The notice provided:

If the above delinquency now due under the contract has not been paid within fifteen (15) days *from the effective date of this notice,* the Ott's will consider the contract terminated . . .. [Emphasis added].

This notice did not make *the date the notice was mailed* effective as provided in the contract. The notice stated that the plaintiffs would consider the contract terminated, if payment was not made "within fifteen (15) days *from the effective date of this notice*". This language means from the date upon which the notice became operative and effective. See, *City of Plantation v. Mason,* 170 So.2d 441 (Fla.1964). The notice did not become effective and operative until it was received by the defendants. This is a just and equitable rule of construction.

If we assume that the notice mailed was received by defendants the following day, February 5, 1976, the date for payment of

$242.00 was fixed on February 20, 1976, and not February 19, 1976.

On the morning of February 20, 1976, plaintiffs withdrew the documents from the escrow agent. On the afternoon of February 20, 1976, defendants tendered payment to the escrowee, but the payment was refused. At 9:00 p.m. that night, defendants received a hand-delivered letter that the default had not been cured.

Payment having been made on time, defendants were not in default, did not hold over, and did not commit an act of unlawful detainer, if a landlord-tenant relationship existed.

Reversed. This cause is remanded to the district court to enter judgment that plaintiffs' complaint be dismissed with prejudice. Defendants shall recover all costs in the trial court and on appeal.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, J., specially concurring.

HERNANDEZ, Judge (Specially Concurring).

The pertinent parts of the real estate contract which forms the basis of this suit are the following:

"1. That the said Owner, in consideration of the covenants and agreements on the part of the said Purchaser, hereinafter contained, agrees to sell and convey unto the said Purchaser the following real estate situate, lying and being in the County of Bernalillo and State of New Mexico, to wit:

.    .    .    .    .

"SUBJECT ALSO TO that certain real estate mortgage to Albuquerque Federal Savings and Loan Association recorded on September 11, 1972 in Book MD 9A, pages 476 through 478 of the records of Bernalillo County, New Mexico, Loan No. 3–51226–8 which mortgage the purchaser herein assumes and agrees to pay according to its terms.

.    .    .    .    .

"3. In consideration of the premises, the said Purchaser agrees to buy said real estate and to pay said Owner therefor the sum of Forty six thousand dollars ($46,-000) lawful money of the United States of America, which sum is to be paid as follows, to-wit: Seven thousand dollars ($7,000.00), cash in hand paid, the receipt of which is hereby acknowledged, and the balance of $39,000.00 shall be payable as follows, to-wit: $26,182.73 by assuming and paying the mortgage set out above in monthly payments, presently in the amount of 242.00 which payments include principal, interest, taxes and insurance beginning with the payment due on November 1, 1975, and $242.00, or more, if Trust Fund assessments are increased, on or before the first day of each succeeding month until fully paid. Payments include interest at the rate of 7¾ per annum. $12,817.27 balance of Owner's equity, which Purchaser will pay as follows: $118.00, or more, beginning on December 15, 1975 and $118.00, or more, on or before the fifteenth day of each succeeding month. Interest at the rate of 8½ per annum, is included in said monthly payments. In addition to the monthly instalments of $118.00, the Purchaser shall pay to the Owner an additional $2,000.00, or more, before January 1, 1976.
Escrow Agent hereinafter named shall collect the full amount of $360.00, or more, and disburse as ordered in Escrow Letter herein.

.    .    .    .    .

"8. It is mutually agreed that time is the essence of this contract. Should the Purchaser fail to make any of the said payments at the respective times herein specified, or fail or refuse to repay any sums advanced by the Owner under the provisions of the foregoing paragraph, or fail or refuse to pay said taxes, assessments or other charges against said real estate and continue in default for fifteen (15) days after written demand for such payments of taxes, or payment of assessments or other charges against said real

estate, or repayment of sums advanced under provisions of the foregoing paragraph has been mailed to the Purchaser addressed to them at 3817 Mt. Rainier Dr., N.E. Albuquerque, N. M., or such other address as may be furnished in writing, then the Owner may, at his option, either declare the whole amount remaining unpaid to be then due, and proceed to enforce the payment of the same; or he may terminate this contract and retain all sums theretofore paid hereunder as rental to that date for the use of said premises, and all rights of the Purchaser in the premises herein described shall thereupon cease and terminate and they shall thereafter be deemed a tenant holding over after the expiration of their term without permission. An affidavit made by said Owner or his agent showing such default and forfeiture and recorded in the County Clerk's office shall be conclusive proof, in favor of any subsequent bonafide purchaser or encumbrancer for value, of such default and forfeiture; and the Purchaser hereby irrevocably authorizes the Owner or his agent to thus declare and record such default and forfeiture, and agrees to be bound by such declarations as their free act and deed.

. . . . .

"We also hereby appoint you Escrow Agent hereunder, and direct you as such Escrow Agent to collect the payments provided for in the above contract and place the money so collected to the credit of Owner, disburse $242.00, or more, in payment of mortgage set out herein to Albuquerque Federal Savings and Loan Assn., of Albuquerque, N.M., and the balance to be disbursed to Owner."

Starting with the proposition that the parties are presumed to have intended what the language of their contract clearly expresses, we look to the contract in this instance. See *Woodson v. Lee,* 73 N.M. 425, 389 P.2d 196 (1963). As can be seen from these excerpts purchasers were given credit toward the purchase price for the $7,000.00 cash paid and for the sum of $26,182.73 by assuming the Albuquerque Federal Savings and Loan Association mortgage. The remainder of the contract deals with the balance of the purchase price due the sellers, except the instructions to the escrow agent as to the disbursement of payments. The only payment due under the contract for the month of February, 1976, was due on the 15th in the amount of $118.00. Therefore sellers demand letter of February 3, 1976 was premature and of no effect. Granted that purchasers were in default on the mortgage payment due February 1, 1976, there is nothing in the contract giving the sellers the right to rescind for that reason. The payments referred to in paragraph 8 are the monthly payments of $118.00 due to the sellers. The fact that the mortgage payments were to be made through the escrow agent does not, in my opinion, make them payments due under the contract. The sellers could easily have provided in the contract that failure to make the mortgage payments on the due dates would give the sellers the right to rescind under the provisions of paragraph 8. They did not.

For these reasons I would reverse and remand with instructions to the trial court to vacate its judgment in favor of plaintiffs and reinstate this cause on its calendar for a hearing on defendants counterclaim.