OPINION OF THE COURT
RENDELL, Circuit Judge.
Appellant LTCW Trust (“Trust”), successor to the Debtors in the underlying bankruptcy proceeding, appeals the District Court’s reversal of the Bankruptcy Court’s grant of summary judgment to the Trust. The Trust’s principal argument is that the District Court erred in ruling that the Bankruptcy Court could use its equitable power to avoid a contractual deadline on Appellee Nextel’s right to exclude certain short-term leases from a sale of substantially all the Debtors’ assets and demand the release of escrow funds where Nextel was late in providing notice of which leases it wanted to exclude from the sale and in making the demand on the escrow agent. The Trust characterizes the disputed contract provision as an “option” that must be strictly enforced, whereas Nextel characterizes enforcement of the provision as effecting an inequitable “forfeiture.”
The District Court had jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). Because we conclude on the facts in this case that the Bankruptcy Court cannot use its equitable power to avoid a clearly enforceable contractual term, we will vacate the District Court’s order and remand to the Bankruptcy Court for further proceedings.
I.
As we write solely for the parties, and the facts are known to them, we will discuss only those facts pertinent to this appeal. This matter arises from the sale by the Debtors of substantially all of their assets to Nextel. To transact the sale, the parties executed an Asset Purchase Agreement, an Escrow Agreement, a Letter *726 Agreement (dated February 1, 2001), and an Amendment to the Letter Agreement (dated April 27, 2001). Under the terms of the Asset Purchase Agreement and the Escrow Agreement, $3.2 million (10%) of the $32 million purchase price for the Debtors’ assets was to be retained in escrow with the Bank of New York (“escrow agent”) after closing to secure the Debtors’ post-closing obligations. Under the terms of the Escrow Agreement, Nextel was required to give written notice to the escrow agent “not later than ninety (90) days” from the closing date if it sought disbursement from the retained funds.
The retained escrow funds were intended to secure the Debtors’ obligation under the Letter Agreement to assign certain short-term leases to Nextel with extensions or renewals of at least one year. The Letter Agreement, as modified by the April 27, 2001 Amendment, provided:
1. If Seller is unable to assign a Shorts Term Lease to Purchaser on or before the date which is 90 days after the Closing Date together with an extension or renewal of the lease term of at least one year (but no more than three years) from the expiration date set forth in such Short-Term Lease with an Acceptable Modification, as defined in paragraph 3 below, then Purchaser may elect in writing (the “Notice”) within ten ninety days from the Closing Date to treat such Shorb-Term Lease as an Excluded Asset under the Agreement (an “Excluded Lease”) and to recover from the Indemnity Escrow Funds an amount equal to $125,000 for such Excluded Lease (the “Lease Agreement”), in accordance with the terms of Article VIII of the Agreement and the Escrow Agreement.
2. If Purchaser elects to treat a Short-Term Lease as an Excluded Lease and receive a Lease Adjustment, Purchaser covenants and agrees that, for a period of one year from the Closing Date, Purchaser and its Affiliates shall not own, lease, or operate (directly or indirectly) any retail or commercial facility at or within the shopping center or mall in which such Excluded Lease is located
(Letter Agreement, app. at 117a; Amendment to Letter Agreement, app. at 122a (strike-through indicates omission, double-underline indicates addition).) In short, under the Letter Agreement, if the Debtors were not able to assign a short-term lease with an extension or renewal to Nextel by ninety days after the closing date, Nextel could notify the Trust that it wished to exclude the lease from the sale and recover $125,000 per lease from the retained escrow funds, but Nextel would then be barred from opening a facility in the same shopping complex for a year. Under another provision of the Letter Agreement, Nextel could recover from the escrow funds any rent increases of greater than 10% for the leases the Debtors were successful in assigning.
According to the affidavit of Rand S. Bailin, then Director of Strategic Planning in charge of negotiating the transaction between Nextel and the Debtors, at.closing on May 1, 2001, Bailin informed a representative of the Trust that Nextel intended to make an immediate demand on the escrow agent for a disbursement of funds for certain leases Nextel wished to exclude from the asset purchase. As the Debtors desired “the opportunity to continue negotiating with the landlords in order to try to arrange lease extensions that would be acceptable to Nextel” and “the Parties were in the process of ongoing negotiations at that time concerning the extensions of certain of the Short-Term Leases,” Bailin “agreed to wait to make a demand until a final refund amount could be determined.” (Bailin Aff. If 10, at 134a.)
*727 By July 30, 2001, the Debtors had not obtained the desired extensions of the short-term leases. According to Bailin, the representative for the Trust telephoned him and “requested that [they] negotiate a further amendment to the agreements so that [the Debtors] would have additional time to negotiate extensions of the remaining Short-Term Leases.” (Bailin Aff. H13, at 134a.) They “discussed the best way to give the Debtors additional time to perform. In the end, the decision was made to give notice to the Escrow Agent of a demand for disbursement in an indefinite amount. Nextel agreed to allow the Debtors to continue negotiations with the lessors, in an attempt to complete their performance under the Asset Purchase Agreement.” (Id.) Nextel has not argued that, in this conversation or otherwise, the Letter Agreement was ever modified, nor has it contended that any assurances were ever given upon which a claim of promissory estoppel could be based.
Nextel gave a general notice of a desire to draw on the escrow on July 31, 2001. It did not state that it desired to exclude any leases from the transaction. On August 23, 2001, the Trust made a demand on the escrow agent for a disbursement of the remaining escrow funds, claiming that Nextel gave its notice a day late, ie., on the 91st day after closing. The next day, Nextel made a demand on the escrow agent for a disbursement of $1,625,000, corresponding to the non-assignment of thirteen (13) leases, and $77,858, corresponding to rent increases of greater than 10% in leases that were assigned. The Trust filed an action against the escrow agent to compel disbursement, and Nextel intervened and opposed the disbursement, claiming it was entitled to $2.2 million of the funds for the short-term leases as to which extensions had not been obtained.
Before the Bankruptcy Court, Nextel argued that the Court could use its equitable power to disregard the fact that Nextel provided notice one day late as the escrow was meant to secure the Debtors’ obligation and the forfeiture the day’s delay would work on Nextel would be inequitable given the circumstances. The Bankruptcy Court, however, concluded that even as a court of equity it did not have the power “to ignore the parties’ contractual agreements,” and “under the strict terms of the escrow agreement,” the escrow agent was obligated to disburse the funds to the Trust. (Oral Dec. of Bankr.Ct., app. at 720a.) The obligation to pay funds to Nextel rather than to the Trustee would only arise if leases had been excluded.
Nextel appealed this ruling to the District Court. Under a plenary standard of review, the District Court concluded that the Bankruptcy Court could exercise its equitable power “to avoid working an unfair forfeiture on Nextel.” The District Court found that: (1) Nextel had substantially performed its obligations under the agreements and continually cooperated with the Trust by granting it additional time; (2) there was no evidence that the one day delay worked any prejudice on the Trust; and (3) the circumstances of the case indicated that Nextel worked cooperatively and in good faith in providing several extensions. Therefore, “strict compliance with the terms of the Escrow Agreement was not necessarily required, and ... the Bankruptcy Court should have considered the application of equitable principles to avoid effectuating a forfeiture on Nextel.” (Dist. Ct. Op., app. at 21a.)
II.
“Although this Court’s jurisdiction is over the decision of the District Court, 28 U.S.C. § 158(d), ‘review of the District *728 Court’s decision effectively amounts to review of the bankruptcy court’s opinion in the first instance.” ’ In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir.2004) (quoting In re Hechinger Inv. Co. of Del., 298 F.3d 219, 224 (3d Cir. 2002)). Therefore, “[i]n undertaking our review, we stand in the shoes of the district court, applying a clearly erroneous standard to the bankruptcy court’s findings of fact and a plenary standard to that court’s legal conclusions.” In re Krystal Cadillac Oldsmobile GMC Truck, Inc., 142 F.3d 631, 635 (3d Cir.1998).
III.
As noted above, the principal issue on appeal is the District Court’s conclusion that the Bankruptcy Court could use its equitable power to avoid the effect of Nextel’s late notice to the escrow agent and its late notice that leases were intended to be excluded. We agree with the Bankruptcy Court’s initial conclusion on this matter, i.e., that even as a court of equity, on the facts of this case, it was without power “to ignore the parties’ contractual agreements.” The clear terms of the parties’ agreement, specifically, the Letter Agreement, as modified by the April 27, 2001 Amendment, required Nextel to exclude leases within ninety days from the closing date. The parties agree that this term was not amended, despite some discussion on July 30, 2001 regarding another extension of time.
Although the District Court held, and Nextel argues, that the Bankruptcy Court can use its equitable power to avoid effecting a forfeiture on Nextel and grant a windfall to the Trust for leases it did not satisfactorily extend, we believe that there is no room for equity to interfere with the unambiguous and enforceable terms to which the parties have agreed to be bound. See In re 1616 Reminc Ltd. Partnership, 13 B.R. 948, 951 (Bankr.D.Va.1981) (“[T]he parties are bound as to those matters which they, by mutual agreement, express in the terms and conditions of a written agreement entered into freely by them. To allow [the defendant] to receive the funds in the escrow account under a forfeiture theory ‘would result in effectively nullifying the specific agreement of the parties.’ ”) (quoting Melfi v. Goodman, 73 N.M. 320, 388 P.2d 50, 52 (1963)). Without passing upon Nextel’s characterization of the situation as a “forfeiture” (as to which no evidence was offered in the Bankruptcy Court) or the Trust’s construction of the term as an “option,” we conclude that, as a matter of contract law, the parties have pointed to nothing that would justify a modification of their agreement, and the Bankruptcy Court’s equitable power cannot be invoked to avoid the agreement’s otherwise enforceable terms.[1]
IV.
Accordingly, we will VACATE the District Court’s order reversing the Bankruptcy Court’s grant of summary judgment to the Trust, and we will REMAND to the Bankruptcy Court for proceedings consistent with this opinion.

. In light of our ruling, we need not address the Trust’s argument that the District Court erred in denying it leave to supplement the record to clarify alleged misstatements of fact by Nextel regarding the amount of escrow funds to which it is entitled.